588 A.2d 932

James DALKIEWICZ and Joseph Dalkiewicz, T/A
Dale and Dale Design Development Company

v.

REDEVELOPMENT AUTHORITY OF LUZERNE
COUNTY and Borough of Edwardsville.

Appeal of REDEVELOPMENT AUTHORITY
OF LUZERNE COUNTY.

Superior Court of Pennsylvania.

Argued Oct. 16, 1990.

Filed March 11, 1991.

Reargument Denied April 23, 1991.

Joseph M. Blazosek, West Pittston, for appellant.

James R. Anzalone, Wilkes–Barre, for Dalkiewicz, appellee.

Before DEL SOLE, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

This case involves an appeal from the December 26, 1989, order [1] (reduced to judgment thereafter) denying the post-trial motions of the defendant/appellant (Redevelopment Authority of Luzerne County) and granting the plaintiffs/appellees' (James and Joseph Dalkiewicz, t/a Dale and

---

1. In adherence to our Rules of Civil Procedure, which encompass the procedure in an action in equity (see Pa.R.Civ.P. 1501 et seq.), we would observe that the instant suit was brought in equity, and, as such, the ruling appealed should have been from a *final decree* of the court below.

   The error in identifying the appeal as having been perfected from an order, in contradistinction to a final decree, is not fatal to our resolution of the issue raised since it is a misstep of procedure not affecting the substantial rights of the parties or the jurisdiction of this Court to entertain the appeal. See generally Pa.R.Civ.P. 126.

Dale Design Development Co.) request for specific perform-ance.[2] We affirm.

The record indicates that a complaint in equity was filed by the plaintiffs seeking, *inter alia,* an order of specific performance directing the defendant to "sell and convey" four parcels of real estate, and to approve the construction of four single-family dwellings thereon, in accordance with a June 16, 1982, agreement between the defendant and the plaintiffs. See Plaintiffs' Complaint in Equity at Paragraph 5; Plaintiffs' Amended Complaint in Equity at Paragraph (c). The plaintiffs had presented "good-faith" deposits to-talling $1,508.00 to the defendant to secure the sale of the parcels to them.[3] It was the contention of the Redevelop-ment Authority that the monies received were "as a good faith deposit, but it ... expressly denied that any such receipt constitute[d] a written agreement" between the plaintiffs and the defendant "as either ... an option or Agreement of Sale." See Defendant's Answer to Amended Complaint at Paragraph 5.

Both parties agree that in June of 1985, the two met to discuss the impact of the Urban Development Action Grant (hereinafter "UDAG"), a federally funded program applied for by the plaintiffs in 1982 to assist low-income families to obtain housing at a "no-interest" rate.

It was the position of the plaintiffs that an agreement had been entered into on June 21, 1985, reaffirming its status as "developer" of the four lots in the Borough of Edwardsville. See Plaintiffs' Complaint in Equity at Para-graph 22. Also discussed was whether a reapportionment

**2.** The initial suit had named Edwardsville Borough as a defendant. However, a motion for summary judgment was granted to Edwards-ville Borough dismissing it from the lawsuit.

**3.** A fifth parcel, designated Disposition Parcel No. 2–26, was sold and conveyed to the plaintiffs' nominee, a Mr. Charles Stajewski, by the defendant. See Plaintiffs' Complaint in Equity at Paragraphs 5 and 26; Defendant's Answer to Amended Complaint at Paragraph 16. Thus, it is not listed as an object of the dispute between the litigants, even though the dollar amount of $630.00 is referenced by the plain-tiffs as a "good-faith" deposit paid to the defendant to purchase the parcel. *Id.*

of the properties indicated an increase in value, and, if such were the case, the plaintiffs still intended to pay the price to develop the lots. *Id.* at Paragraphs 21(a) and 25. The defendant denied that such an agreement had been reached on June 21, 1985, and, in new matter, the bar of the Statute of Frauds was asserted. See Defendant's Amended Complaint at Paragraphs 27 and 50.

One of the lots and a portion of a second were recommended by the Edwardsville Borough to be "developed" by one Rowland Roberts, the then newly hired Chief of Police for the borough. Thereafter, the defendant "approved" Roberts for the lots designated by the borough, while the plaintiffs were designated as "developer" on the remaining portion of the four lots. Disenchanted with the decision of the defendant and the borough, the instant lawsuit was commenced. Following the submission of pleadings by the respective parties, a hearing was conducted beginning on May 11, 1987. Subsequently, the court entered an order, accompanied by an opinion, directing the defendant to transfer legal title to the four parcels at issue to the plaintiffs. After the submission and denial of post-trial motions, this appeal ensued and raises six issues which, when distilled, are reduced to the question: Did an agreement exist between the parties sufficient to satisfy the Statute of Frauds [4] and entitle the plaintiffs to specific performance?

The Statute of Frauds requires that agreements for the sale of land be signed and in writing. *Hessenthaler v. Farzin,* 388 Pa.Super. 37, 40, 564 A.2d 990, 992 (1989). This requirement can be met by creation of a written memorandum that need not consist of one single document. *Target Sportswear v. Clearfield Foundation,* 327 Pa.Super. 1, 10–11, 474 A.2d 1142, 1147–1148 (1984).

As recited by the *Target* Court, quoting Section 208 of the Restatement of Contracts, the validity of such a memorandum can be established as follows:

The memorandum can consist of several writings,

4.  33 P.S. § 1.

(a) if each writing is signed by the party to be charged and the writings indicate that they relate to the same transaction, or

(b) though only one writing is signed if

(i) the signed writing is physically annexed to the other writing by the party to be charged, or

(ii) the signed writing refers to the unsigned writing, or

(iii) it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings.

*Id.,* 327 Pa.Superior Ct. at 11, 474 A.2d at 1148. The question we must decide is whether there existed a document or documents sufficient to satisfy the Statute of Frauds with regard to the sale of the parcels in Edwardsville Borough by the Redevelopment Authority to the plaintiffs.

First, we have evidence of the plaintiffs being listed as "developer" on the "Identification of Ownership" sheets naming the lots in question (Disposition Parcels Nos. 2–34 through 2–37). Each document has the signature of "Jane M. Thomas", below which appears the date (9/19/84) and verbiage: "Authorized Agent".[5] See Plaintiffs' Exhibits 2–5. We also have receipts on the defendant's stationery (four in number and as is relevant to our determination) that show the plaintiffs having made "good-faith" deposits (totalling $1,508.00) for the disposition of the parcels at issue (# 2–34 to # 2–37). As with the previously discussed exhibits, each was affixed with the signature of "Jane Thomas" at the end thereof and below which appeared the legend: "Authorized Signature" of the defendant.[6] See Plaintiffs' Complaint in Equity at Exhibit "A"; Trial Court's Opinion at 5–6.

**5.** Ms. Thomas is the secretary for the Redevelopment Authority and is the individual the plaintiffs dealt with on at least thirty occasions to make payment of "good-faith" deposits leading to the securement of parcels of land in the past from the Redevelopment Authority.

**6.** We would note that the plaintiffs' Complaint in Equity contains a document captioned: "Part II—Redeveloper's Statement For Public Disclosure", dated June 9, 1982, and names the plaintiffs as "redeveloper" of the property owned by the defendant in Edwardsville.

Second, of record appears a typed agreement by and among Edwardsville Borough, the defendant and the plaintiffs dated August 16, 1982.[7] The agreement provided in pertinent part that: the borough had obtained a grant from the federal Housing and Urban Development agency (hereinafter "HUD") in the amount of $112,320.00 to finance nine dwelling units in the borough; the plaintiffs had been designated by the borough as a "developer"; the defendant was willing to sell the nine parcels to the "developer"/plaintiffs; and that the agreement was being executed to satisfy HUD requirements. Additionally, in Section 2 of the agreement it read:

> The Authority has designated [the plaintiffs] as the developer of the parcels. The Authority will enter into a separate Redevelopment Agreements [sic] with [the plaintiffs] pursuant to which the nine (9) parcels in question will be conveyed directly to them. * * *

None of the parties disputes the fact that the parcels referred to in the 1982 agreement included the same parcels which are the subject of the present dispute. And, although various matters had yet to be satisfied (HUD's review and approval of the evidentiary material required by the agreement, building permits by the borough and approval of the plaintiffs' agreement by the Redevelopment Authority), the parties were "not aware of any reason why the governmental approvals not yet obtained w[ould] not be forthcoming as a matter of due course."

Finally, the record indicates that the plaintiffs prepared "design" plans as of July 1, 1982, with regard to the manner and method it would construct the dwellings.[8] See Plaintiffs' Complaint in Equity at Exhibit "B".

7. The following signatures appear on page 5 of the agreement: James O. Hankey signed on behalf of Edwardsville Borough; Thomas E. Lehman, III (as Chairman) and Raymond M. Marusak (as Secretary) for the defendant on 8/16/82; lastly, James Dalkiewicz wrote his name for the plaintiffs as of 12/22/82.

8. It was the testimony of James Dalkiewicz that "plans" were submitted to the Redevelopment Authority in 1982, along with the "good-faith" deposits, to secure the lots in Edwardsville Borough. This was

As concluded by the trial court, and we concur in its finding from our review of the evidence, "it is clear that there was a writing or writings sufficient to satisfy the Statute of Frauds." Trial Court Opinion at 6.

consistent with what Dalkiewicz had done in the past with Redevelopment Authority property. In fact, on seventy-three prior occasions where money had been paid on the lots, the plaintiffs actually entered into possession of the land and built structures "thirty times". Agreements of sale were signed in each of the thirty instances "at the closing". As told by Mr. Dalkiewicz:

... before we took possession of the land, we entered onto thirty of them and started [construction] before we even took possession and prior to the signing of the Memorandum of Agreement of Sale....

This was noted by the trial court in its remarks that, because the parties had dealt with each other in the past in a similar fashion, the fact that the Redevelopment Authority had engaged in a course of conduct in its dealings with the plaintiffs (which was not in conformity and compliance with all the rules and regulations which it now was attempting to assert as a defense to the enforcement of a binding agreement) was not favorable to its case. The trial court characterized the defendant as having "lured" the plaintiffs into a "sense of false security based upon past dealings and [it] therefore h[e]ld that it would ... be inequitable and unjust to allow the Defendant Authority to act in such a bad faith and capricious manner, as they [were] ... attempt[ing] to do, in refusing to sell Plaintiffs the subject parcels." Trial Court Opinion at 7–8. Cf. *Thatcher's Drugs v. Consol. Supermarkets*, 391 Pa.Super. 524, 571 A.2d 490 (1990) (A contract need not exist to seek the protective sphere of the doctrine of equitable estoppel, whose objective it is to prevent the perpetuation of an injustice upon one claiming its benefits).

In reliance on the Authority's conduct, the plaintiffs deposited fifty truck-loads of land-fill on the lots in question over the course of three years to bring the property even with or above the road surface.

Moreover, there was testimony from both sides that the parties, represented by counsel at the June, 1985 meeting, dealt with the Edwardsville Borough lots. Thus, the parties and counsel were actively involved in discussion seeking to reassess the properties and reach an amicable resolution of the matter. Cf. *Mackey v. Adair*, 99 Pa. 143 (1881) (Presence of client at making of an agreement regarding land circumvents a defense that one acting on behalf of client did not have authority to act).

Representatives of the Authority, if the testimony of Attorney Gurdin and Mr. Dalkiewicz is to be believed, were present when all parties reaffirmed the plaintiffs' 1982 agreement to have the lots transferred to the plaintiffs. Accordingly, the action of the court is subject to affirmance on a basis supplemental to its initial ground for ordering specific performance in favor of the plaintiffs. In either instance, we find that the facts, as reviewed by this Court, justify an affirmance of the action of the trial court.

With the ruling of the trial court granting the plaintiffs' request for specific performance, and the same being supported by record evidence and the law, we see no reason to disturb the trial court's determination.

Affirmed.