674 A.2d 297

**EMPIRE PROPERTIES, INC., Appellee,**

v.

**EQUIREAL, INC., Appellant.**

Superior Court of Pennsylvania.

Argued May 25, 1995.

Filed April 4, 1996.

478

480

Walter Weir, Jr., Philadelphia, for appellant.

David A. Scotti, Pittsburgh, for appellee.

Before WIEAND, DEL SOLE and CERCONE, JJ.

WIEAND, Judge:

This action was brought by a disappointed purchaser of real property who alleged that the vendor had breached a written agreement of sale, which had been orally modified to extend the date of performance, by repudiating the agreement and selling the land to another buyer. The purchaser, Empire Properties, Inc., filed suit against the vendor, Equireal, Inc., in which Empire alleged that Equireal's breach of the contract entitled it to recover damages for loss of its deposits, pre-closing expenses and lost profits. Following a jury trial, a verdict was returned in favor of Empire in the amount of $250,000.00 for the loss of its deposits, plus $16,028.15 in pre-closing expenses. No damages were awarded for lost profits. The verdict was then molded by the trial court to reflect the award of pre-judgment interest at the rate of 6% per annum. Post-trial motions were filed by Equireal, and were denied by the trial court on January 5, 1995. Thereafter, judgment was entered on the verdict and Equireal filed the present appeal. On appeal, Equireal asserts that: (1) an alleged oral modification of a written agreement for the sale of land, which purports to extend the time of performance, is unenforceable under the Statute of Frauds; (2) such an oral modification of a written contract is unenforceable absent valid consideration; (3) in the absence of proof by Empire that Equireal waived provisions in the contract making time of the essence and prohibiting oral modification, Equireal was entitled to judgment notwithstanding the verdict; and (4) the trial court erred in instructing the jury regarding Empire's burden of proving the existence of an oral modification of the written agreement and its entitlement to recover damages resulting from Equireal's alleged breach of the agreement. We will consider these claims seriatim.

On June 3, 1991, appellant and Empire entered into a written contract by which appellant agreed to sell and Empire agreed to buy a one hundred and forty-one (141) acre tract of land in Franklin Park, Pittsburgh, Pennsylvania, which was known as the Schneider Farm. Pursuant to this contract, the purchase price of the Schneider Farm was to be $2,500,000.00, of which Empire was required to pay a deposit of $100,000.00, and which was contingent upon Empire closing the deal on June 28, 1991. However, the contract provided that Empire could exercise an option to extend the closing date to September 30, 1991, by making an additional deposit of $150,000.00.[1] If the later closing option were exercised, the purchase price would be increased to $2,700,000.00.

The agreement of sale included three provisions which are the subject of the instant appeal. First, the agreement contained a clause which provided that "time is of the essence". Secondly, there was a "no oral modifications" clause, which prohibited any modifications to the contract which were not in writing and signed by the party to be charged. Finally, the agreement had a liquidated damages clause, which provided for the forfeiture of all deposits paid by Empire in the event that Empire failed to close within the time provided in the contract.

On June 28, 1991, appellant was unable to close due to problems relating to encumbrances upon its title to the Schneider Farm. Shortly thereafter, Lawyers Title Insurance Company issued a commitment, with certain exceptions noted, to insure the quality of appellant's title. Meanwhile, Charles O'Hanlon, a senior vice president at Equireal, and Frank Pelly, one of Empire's principals, negotiated an oral agreement to extend the settlement date to July 12, 1991, without penalty, in order to provide Empire with an opportunity to investigate a number of gas leases and utility easements appearing as encumbrances against the property and to determine how these encumbrances might effect Empire's ability to develop the property. Later, the substance of the oral agreement was memorialized in letter agreements drafted by appel-

---

1. This deposit was to be paid in three installments of $50,000.00.

lant on July 3 and July 12, 1991.[2] Subsequently, Empire exercised its option to extend the time of closing until September 30, 1991. Accordingly, Empire paid to appellant an additional deposit of $150,000.00 to secure the extension and the purchase price rose to $2,700,000.00.

According to Empire's evidence, Pelly contacted O'Hanlon on or about September 1, 1991, and informed him that Empire was going to need additional time to put favorable financing in place. Pelly testified that O'Hanlon asked him to determine exactly how much extra time would be required. On or about September 15, 1991, Pelly phoned O'Hanlon and requested a 30 day extension of the settlement date. This call was allegedly placed during a meeting with other principals of Empire. Pelly testified that O'Hanlon asked if Empire could close in a shorter period of time and Pelly responded in the negative. According to Pelly, he said, "[y]ou better grant me the 30 days" to which O'Hanlon replied, "Okay, I will give you the 30 days extension." Empire's vice president, Alex Efremenko, who was present at the meeting, testified that he heard Pelly ask for an extension of time. Although Efremenko did not hear O'Hanlon's response, after the phone call, Efremenko learned that Empire was now working on an end of October closing date. Virginia Pelly, the wife of Frank Pelly, testified that at a meeting, which occurred after appellant had terminated the sale, O'Hanlon responded "yes, yes" when Frank Pelly said, "you agreed to give me an extension." In contrast, O'Hanlon testified that he had never agreed to or admitted an extension of the closing date.

According to appellant, it had stood ready to perform its obligations and Empire had defaulted on the agreement by failing to appear for closing on September 30, 1991. Appellant did not dispute that O'Hanlon and Pelly had had a telephone

2. The July 3, 1991 letter from appellant to Empire stated "we have agreed to amend and extend the Agreement of Sale on the following terms and conditions...." On July 9, 1991, Empire signed the letter in a space provided and returned it to appellant, thereby indicating that it "agreed to and accepted" the terms set forth. The July 12, 1991 letter from appellant to Empire stated "we agreed orally to extend and modify the Agreement as reflected in my letter of July 3, 1991...."

conversation in which Pelly requested the alleged extension. Rather, appellant presented evidence that O'Hanlon had told Pelly there could be no extension, whereupon Pelly represented to O'Hanlon that Empire had a written commitment for financing and could close by October 31. O'Hanlon then told Pelly to put Empire's request for an extension in writing and to show Equireal the written commitment, but made no promises other than to consider Empire's request.

On October 1, 1991, William Nolan, president of Empire, drafted a letter to appellant in which Empire made a "formal request for an extension to the sales agreement" and attached a copy of a commitment by a Dr. E. Ronald Salvitti to finance the property. Nolan's letter advised that there were "items in the commitment that need to be further refined, necessitating the extension." The evidence was that Nolan's letter was written at the direction of Pelly and was based upon Pelly's conversation in mid-September with O'Hanlon. According to Pelly, he had not found it necessary to memorialize the alleged oral agreement to extend the date of performance because the agreement was based on "a gentleman's word" and there had been previous verbal agreements between Empire and appellant. Pelly explained that he had eventually asked Nolan to draft the letter after having a conversation with O'Hanlon at the end of September in which O'Hanlon asked for a formal request for an extension for the benefit of appellant's board of directors. Pelly said that he had instructed Nolan to draft a formal request for an extension, rather than a confirmation of the alleged verbal agreement, pursuant to O'Hanlon's request.

On October 3, 1991, appellant sent a letter to Empire notifying Empire that it was in default under the sales agreement for failing to close on September 30, but advising that appellant was in the process of reviewing the proposed financing commitment submitted with Nolan's letter. On October 7, 1991, appellant returned Dr. Salvitti's letter of commitment and advised that it had no interest in pursuing the Schneider Farm sale with Empire. Appellant also informed Empire that it would be exercising the liquidated damages clause of the agreement and thereby retaining the deposits paid by Empire.

Thereafter, on October 11, 1991, appellant sold the Schneider Farm to Property Ventures Limited for $2,150,000.00, some $550,000.00 less than the $2,700,000.00 that Empire had agreed to pay. At no time did Empire make a formal tender of performance.

Empire filed suit against appellant to recover damages, including loss of its $250,000.00 in deposits, pre-closing costs and lost profits. Empire asserted that the June 3, 1991 agreement had been orally modified to extend the date of settlement to October 31, 1991, and that appellant had breached the contract by terminating it prior to the extended settlement date. Appellant defended on grounds that there had been no oral modification of the contract and, that, in any event, oral modification was precluded by the Statute of Frauds and by the express terms of the contract. Appellant further maintained that it was entitled to keep the $250,000.00 in deposits paid by Empire pursuant to the liquidated damages clause of the contract.

█ Appellant initially asserts that any oral modification of its written contract with Empire was precluded by the Statute of Frauds.[3] Therefore, appellant argues, the trial court erred by permitting the jury to hear evidence of the alleged oral modification of the written agreement to extend the date of closing. For the reasons which follow, we are persuaded that the Statute of Frauds was inapplicable to the instant action to **recover damages** for the breach of a written contract for the sale of land, which had been orally modified to extend the date of settlement.

█ "The statute of frauds directs that agreements for the sale of real estate shall not be enforced unless they are in writing and signed by the seller. The purpose of the statute is to prevent perjury and fraudulent claims." *Hostetter v. Hoover*, 378 Pa.Super. 1, 7, 547 A.2d 1247, 1250 (1988). See also: *Brotman v. Brotman*, 353 Pa. 570, 573, 46 A.2d 175, 177 (1946); *Rosen v. Rittenhouse Towers*, 334 Pa.Super. 124, 130–131, 482 A.2d 1113, 1116–1117 (1984). "The Statute of Frauds

**3.** Act of March 21, 1772, 1 Sm.L. 389, § 1, 33 P.S. § 1.

does not void those oral contracts relating to land which fail to comply with the Statute's formal requirements. It is to be used as a shield and not as a sword, as it was designed to prevent frauds, not to encourage them." *Fannin v. Cratty,* 331 Pa.Super. 326, 332, 480 A.2d 1056, 1059 (1984), citing *Zlotziver v. Zlotziver,* 355 Pa. 299, 49 A.2d 779 (1946) and *Gerlock v. Gabel,* 380 Pa. 471, 112 A.2d 78 (1955). Therefore, even though an oral contract for the sale of real estate may not be specifically enforced, it may form the basis for an action to recover damages. See: *Polka v. May,* 383 Pa. 80, 118 A.2d 154 (1955). *Hostetter v. Hoover, supra.*

Under the interpretation that has been given to our statute of frauds a recovery of damages may be had for non-performance of a parol agreement for the sale of land, the measure of such damages being the money that was paid on account of the purchase and the expenses incurred on the faith of the contract.

*Polka v. May, supra* at 84, 118 A.2d at 156. See also: *Fannin v. Cratty, supra* at 331–332, 480 A.2d at 1059; *Weir v. Rahon,* 279 Pa.Super. 508, 512–513, 421 A.2d 315, 317 (1980).

 Instantly, Empire did not seek to specifically enforce the agreement to purchase land from appellant. Rather, it sought only to recover damages suffered on account of appellant's alleged breach of the contract. In order to prove that appellant breached the contract, Empire had to first establish that appellant had agreed to an oral modification extending the date of settlement. To hold that such evidence would be precluded by the Statute of Frauds would permit appellant to use the statute as a sword, rather than a shield. Where, as here, the plaintiff is seeking only compensatory damages, the Statute of Frauds does not preclude the introduction of evidence that a written contract for the sale of land was orally modified. Accordingly, the trial court did not err by allowing Empire to introduce evidence of the oral modification of its written contract with appellant.

 Appellant next argues that the alleged oral modification was not supported by consideration, and therefore, the

modification is unenforceable as a matter of law. While we agree that a valid consideration is required to support an oral modification to a written agreement for the sale of land, *Crown v. Cole,* 211 Pa.Super. 388, 392, 236 A.2d 532, 534 (1967), we disagree that no valid consideration was given in the instant case. " '[C]onsideration is implied from the mutual assent of the parties to the modification.' " *KoEune v. State Bank of Schuylkill Haven,* 134 Pa.Super. 108, 112, 4 A.2d 234, 237 (1939), quoting *Ross v. Pennsylvania Underwriters Co., Inc.,* 123 Pa.Super. 484, 491, 187 A. 62, 65 (1936). See also: *Sun Oil Co. v. Traylor,* 407 Pa. 237, 242–243, 180 A.2d 235, 238 (1962). Therefore, if the jury believed the evidence that Charles O'Hanlon had assented to Frank Pelly's request for a 30 day extension, then a valid consideration is implied to support the oral modification.

Appellant acknowledges that the parties to a written agreement, which contains provisions making time of the essence and prohibiting oral modifications, may waive either or both provisions. See: *Warner Co. v. MacMullen,* 381 Pa. 22, 29, 112 A.2d 74, 78 (1955); *Accu–Weather, Inc. v. Prospect Communications, Inc.,* 435 Pa.Super. 93, 101, 644 A.2d 1251, 1255 (1994). See also: *Universal Builders, Inc. v. Moon Motor Lodge, Inc.,* 430 Pa. 550, 557, 244 A.2d 10, 15 (1968); *Wagner v. Graziano Construction Co.,* 390 Pa. 445, 448–449, 136 A.2d 82, 84 (1957); *Davis v. Northridge Development Assoc.,* 424 Pa.Super. 283, 289–290, 622 A.2d 381, 385 (1993). Appellant disputes, however, that there was any evidence that it agreed to waive either provision in its contract with Empire. This lack of evidence, appellant contends, entitles it to a judgment notwithstanding the verdict. We disagree.

Instantly, Empire alleged that appellant had agreed orally to extend the settlement date from September 30, 1991 to October 31, 1991. The law is clear, however, that an extension of the time for performance to a specified future date does not defeat a provision in a contract making time the essence of the agreement. *Wasserman v. Steinman,* 304 Pa. 150, 154–155, 155 A. 302, 303 (1931); *Mansfield v. Redding,*

269 Pa. 357, 360, 112 A. 437, 438 (1921); *Davis v. Northridge Development Assoc., supra.* As such, even after an oral modification of the time of performance, the time is of the essence clause remains in full force and effect. Empire, therefore, was not required to present evidence that appellant had waived the "time is of the essence" clause in order to prove the alleged oral modification.

The law is also clear that "[a]n agreement prohibiting non-written modification may be modified by a subsequent oral agreement if the parties' conduct clearly shows an intent to waive the requirement that amendments be in writing." *Accu–Weather v. Prospect Communications, supra.* See also: *Universal Builders, Inc. v. Moon Motor Lodge, Inc., supra; Wagner v. Graziano Construction Co., supra.* Our review of the record discloses that there was sufficient evidence from which the jury could find that the parties had agreed to an oral modification of their contract to extend the time of performance thereby waiving the "no oral modifications" provision of the contract. In this regard, Empire's representative, Frank Pelly, testified that appellant's representative, Charles O'Hanlon, had orally agreed to a thirty day extension of the date of closing. This testimony was corroborated by other evidence, including the testimony of Virginia Pelly and Alex Efremenko, as well as the previous course of conduct occurring between the parties.

We next address appellant's contention that the trial court gave an erroneous jury instruction regarding Empire's burden of proof. "In reviewing a trial court's instructions to the jury, it is well settled that we must view the court's charge in its entirety to determine whether any prejudicial error has been committed." *Cooper v. Burns,* 376 Pa.Super. 276, 283, 545 A.2d 935, 938 (1988). "The primary duty of the trial judge is to clarify the issues and apprise the jury of the legal principles needed to decide the case." *Havasy v. Resnick,* 415 Pa.Super. 480, 498, 609 A.2d 1326, 1335 (1992). "A court's instructions must adequately and accurately state the law and provide the jury with a guide during its

deliberations." *Wilson v. Anderson,* 420 Pa.Super. 169, 173, 616 A.2d 34, 36 (1992). "Erroneous jury instructions may be the basis for a new trial if it is shown that the instructions were fundamentally in error and might have been responsible for the verdict." *Sedlitsky v. Pareso,* 425 Pa.Super. 327, 332, 625 A.2d 71, 74 (1993).

■■■■ With respect to Empire's burden of proof, the trial court charged the jury as follows:

> Plaintiff has the burden of proving by a fair preponderance of the evidence, number one, that there was an oral agreement between the parties to extend the closing date from September 30th, 1991 to October 31st, 1991. Second, the plaintiff must prove by a fair preponderance of the evidence that the defendant breached that contract, thirdly, the plaintiff must prove by a fair preponderance of the evidence that it suffered a loss as a result of that breach, which brings us to the subject of damages.

Trial Transcript, Vol. III at 701. To the extent that this charge permitted the jury to find an oral modification of the written contract **by a fair preponderance of the evidence,** it was clearly erroneous. "The law is well settled that a written agreement can be modified by a subsequent oral agreement provided the latter is ... proved by evidence which is clear, precise and convincing." *Pellegrene v. Luther,* 403 Pa. 212, 215, 169 A.2d 298, 299 (1961) (footnote omitted). "[W]here the writing contains an express provision that it constituted the entire contract between the parties and should not be modified except in writing, the party seeking to show subsequent oral modification in the agreement must prove it by clear, precise, and convincing evidence...." *Nicolella v. Palmer,* 432 Pa. 502, 508, 248 A.2d 20, 23 (1968). An "oral contract which modifies or changes or cancels a prior written contract must be proved by evidence which is clear, precise and convincing." *Pellegrene v. Luther, supra* at 216, 169 A.2d at 300. See also: *Betterman v. American Stores Co.,* 367 Pa. 193, 200, 80 A.2d 66, 71 (1951); *Stoner v. Sley System Garages,* 353 Pa. 532, 533–534, 46 A.2d 172, 173 (1946). This error, moreover, was such that the outcome of the case could clearly have been

affected. To prevail in this case, Empire had to establish that an oral modification to extend the closing date had been agreed to by appellant. This should have been evaluated pursuant to a burden of proof requiring clear, precise and convincing evidence, rather than a mere preponderance of the evidence. Had the jury applied the higher burden of proof to this threshold question in the case, the result may well have been different. Accordingly, a new trial must be granted.

Finally, we address appellant's remaining contention that, in addition to proving a breach by appellant of the agreement of sale, Empire was also required to prove that it was ready, willing and able to close on or before October 31, 1991. In this regard, appellant had presented evidence at trial which sought to establish that Empire would have been unable to secure the financing necessary to perform its obligations under the contract.[4] Absent proof of an ability to perform, appellant argues that Empire should not have been permitted to recover any damages.

In a breach of contract action, damages are awarded to compensate the injured party for loss suffered due to the breach. The purpose of damages is to put the plaintiff in the position he or she would have been in but for the breach. *Maxwell v. Schaefer*, 381 Pa. 13, 21, 112 A.2d 69, 73 (1955); *Harman v. Chambers*, 358 Pa. 516, 521, 57 A.2d 842, 845 (1948); *Mancini v. Morrow*, 312 Pa.Super. 192, 204, 458 A.2d 580, 586 (1983). See also: *Sechrist v. Bowman*, 307 Pa. 301, 310, 161 A. 332, 335 (1932) (damages means compensation for a legal injury sustained). The measure of damages applicable to the instant action for breach of contract is as follows:

It has been well settled that in a vendee's action against his vendor for breach of a written contract to convey land, the

4. Appellant's evidence included the testimony of Dr. Salvitti, who was unwilling to finance Empire's purchase without Empire's procurement of development financing, and the testimony of William Bonner of First Federal of New Castle, who when asked whether a commitment for development financing could be obtained by October 31, 1991, pursuant to Empire's request, responded that while anything was possible, it was not probable. There was also evidence that Empire was unable to obtain financing from any other sources.

> vendee's right of recovery, if the vendor acted in good faith, is limited to the down money, and such other reasonable expenditures that the vendee has incurred in reliance upon the contract: *Kargiatly v. Provident Trust Company of Philadelphia et al.,* 338 Pa. 358, 12 A.2d 11. However, where a vendor ... arbitrarily and without reasonable excuse, in order to escape the effects of a bad bargain, refuses to comply with his contract, the vendee ... is entitled not only to compensatory damages but to damages arising from the loss of his bargain: *Bartram v. Hering,* 18 Pa.Superior Ct. 395; *Seidlek v. Bradley,* 293 Pa. 379, 142 A. 914.

*Frey v. Nakles,* 380 Pa. 616, 622, 112 A.2d 329, 332 (1955). See also: *Fannin v. Cratty, supra* at 332, 480 A.2d at 1059. The plaintiff bears the burden of proving such damages by a fair preponderance of the evidence. *SHV Coal, Inc. v. Continental Grain Co.,* 376 Pa.Super. 241, 252, 545 A.2d 917, 922 (1988), *reversed on other grounds,* 526 Pa. 489, 587 A.2d 702 (1991). However, if a plaintiff "could not ... have performed the substantial equivalent for which the defendant's performance was agreed to be exchanged, he is given no remedy in damages for the defendant's non-performance or repudiation." 4 A. Corbin, Corbin on Contracts § 978 at p. 924 (1951). See also: *Heron v. Hoffner,* 3 Rawles 393, 400 (1832); Restatement (Second) of Contracts § 254. A party who cannot perform its own obligations under a contract is not entitled to collect damages. *Nikole, Inc. v. Klinger,* 412 Pa.Super. 289, 303–304, 603 A.2d 587, 593–594 (1992). See also: *Jonnet Develop. Corp. v. Dietrich Indus., Inc.,* 316 Pa.Super. 533, 544, 463 A.2d 1026, 1031–1032 (1983).

With respect to the award of damages in the instant case, the trial court instructed the jury as follows:

> [T]here are three components of damage that the plaintiff is claiming in this case. One relates to the loss of deposit, the $250,000. The second relates to pre-closing expenses and there is an exhibit which will be taken up with you which details how plaintiff breaks that down. I think it is sixteen thousand plus dollars. Thirdly, the claim of lost profit.

With respect to the loss of deposit, if you find that there was an oral agreement, if you find liability, that there was an oral agreement to extend that agreement of sale—was modified by the extension and was breached, then the plaintiff is entitled the return of $250,000. With respect to the pre-closing expenses, there is a claim by the defendant in this case that the plaintiff, even if they had gone as far as October 31st would not have been able to close and, therefore, did not incur any expenses as a result of or did not occur any damages as a result of the actions of the defendant. The defendant is asserting that the plaintiff would have incurred those losses regardless, that the expenses incurred prior to closing would have been incurred because they would be able [sic] to put the financing together. You have to make a determination whether the plaintiff has proven by a fair preponderance of the evidence that it suffered damages as a result of the defendant's actions.

That relates to the pre-closing and it relates to the issue of lost profit.

Trial Transcript, Vol. III at 702–704.

It is clear from this jury instruction that the trial court had made Empire's recovery of damages dependent upon Empire's ability to perform, at least with respect to Empire's claim for damages due to pre-closing expenses and lost profits. The trial court, however, allowed the jury to award damages due to loss of Empire's deposits regardless of Empire's ability to perform. In this regard, the trial court erred. *Heron v. Hoffner, supra; Jaffe v. Alliance Metal Co., Inc.*, 337 Pa. 449, 452, 12 A.2d 13, 14 (1940); *Nikole, Inc. v. Klinger, supra; Jonnet Develop. Corp. v. Dietrich Indus., Inc., supra.* The jury should have been instructed that, with respect to meeting its burden of proving damages, Empire was required to prove by a fair preponderance of the evidence that it would have been ready, willing and able to perform its obligations under the agreement of sale.[5]

5. There is no merit in Empire's contention that appellant's breach of the agreement excused its duty of performance. While one party's breach of a contract may render the other party's tender of perfor-

Accordingly, because the trial court gave erroneous jury instructions regarding the burden of proof relating to the oral modification of a written contract and with respect to proof of damages, a new trial must be granted.

The judgment entered in favor of Empire is reversed and the case is remanded for a new trial consistent with the foregoing opinion. Jurisdiction is not retained.

mance a futile act, it does not relieve the other party of the burden of proving its ability to perform under the contract. See: *Sunseri v. Mancuso*, 362 Pa. 161, 163–164, 66 A.2d 830, 831 (1949) (excusing formal tender of performance where defendant-sellers became dissatisfied with their bargain and were attempting to escape it, but evidence showed that plaintiff-buyers had balance of purchase price on hand); *Davis v. Northridge Develop. Assoc.*, 424 Pa.Super. 283, 290–291, 622 A.2d 381, 385–386 (1993) (excusing tender of performance where seller admitted its inability to fulfill its obligations under the contract and buyers "were at all times ready and willing to tender performance.").