**George MIDDLETON, Plaintiff,**

v.

**REALEN HOMES, INC., individually and t/a Rhi–Oak Terrace, L.P., Defendant.**

No. CIV.A. 97–6046.

United States District Court,
E.D. Pennsylvania.

Oct. 27, 1998.

---

**32.** LaRose dep. at 59 ("We're not lawyers.").

Daniel J. Dugan, Kelly R. Ramsdell, Spector Gadon & Rosen, P.C., Philadelphia, PA, for Plaintiff.

Barnett Satinsky, James A. Matthews, III, Fox, Rothschild, O'Brien & Frankel, LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is Defendant, Realen Homes, Inc.'s ("Realen" or "Defendant"), Motion for Partial Summary Judgment as to Count II of Plaintiff, George Middleton's ("Middleton" or "Plaintiff"), amended complaint which seeks recovery for Realen's alleged breach of an agreement to sell Plaintiff a house, and Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction if summary judgment is granted as to Count II. Also before the Court is Plaintiff's Motion for Partial Summary Judgment as to Count I of the amended complaint which alleges breach of contract and seeks recovery of Plaintiff's allegedly guaranteed bonus amount of $65,000. For the following reasons, Defendant's Motion for Partial Summary Judgment as to Count II is granted; Defendant's Motion to Dismiss is denied; and Plaintiff's Motion for Partial Summary Judgment as to Count I is denied.

## BACKGROUND

Plaintiff was hired by Realen in August of 1996 as Division Manager for Realen's Phila-

delphia Division. Middleton's compensation was to be $125,000 per year, with a bonus equal to 3% of the Division Net Income. Realen guaranteed that Middleton's bonus for the first 12 months would be no less than $65,000. However, Realen's standard bonus compensation agreement, referenced in Middleton's offer letter, stated that if Middleton was terminated for cause, as defined in the agreement, he would forfeit all accrued but unpaid bonus compensation.[1] In the offer letter, Realen also offered Middleton the opportunity to purchase a Realen home in one of their neighborhoods at a discounted rate.

Plaintiff decided to build a Realen home in the Aberdeen at Talamore community. Realen authorized Plaintiff to begin construction on the home in approximately November of 1996. Architectural drawings were prepared for Middleton's home, and Middleton prepared an Addendum and Agreement of Sale, which included some figures regarding the cost of the property, its location and specific description, and referenced the architectural drawings. However, Realen did not sign the Agreement of Sale. The facts demonstrate that Middleton and Realen engaged in ongoing negotiations concerning the construction and cost of the home.

In August of 1997, Realen terminated Plaintiff. Realen asserted that Plaintiff was terminated for cause as defined in the bonus compensation agreement and therefore did not pay Plaintiff the $65,000 bonus that had been guaranteed. Regarding the home being built, following his termination Plaintiff wrote a letter to Realen indicating, among other things, that he did not accept their "proposal" for the sale of the house and thus indicated that his purchase of the home was impossible. Realen offered the home for sale to Middleton once more at its appraised value, but Middleton did not accept the offer. Realen subsequently sold the house to a third party at a profit.

Plaintiff brought this action pursuant to 28 U.S.C. § 1332 seeking the $65,000 in bonus compensation and claiming that Realen reneged on the sale of the house to Plaintiff causing Plaintiff a loss of an amount in excess of $100,000. Both parties agree that this action is governed by Pennsylvania law.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* 477 U.S. at 256, 106 S.Ct. 2505. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

### II. Statute of Frauds

Defendant seeks summary judgment on count II of Plaintiff's amended complaint arguing that Plaintiff cannot recover on a breach of contract theory for the sale of the house because Plaintiff has not shown suffi-

---

1. The parties dispute whether Middleton actually received a copy of the standard bonus compensation agreement with his offer of employment. However, there is no question that the bonus agreement is referenced in the offer letter.

cient evidence to demonstrate a signed writing that satisfies Pennsylvania's Statute of Frauds. *See* 33 P.S. § 1. Count II of Plaintiff's amended complaint alleges that Realen entered into an agreement of sale whereby Realen would construct and sell a home to Plaintiff for which Plaintiff would pay the Defendant's construction costs plus a profit of $3,000. *See* (Pl.'s Amended Compl. at ¶¶ 22–24). Plaintiff alleges that Defendant breached the terms of the contract by selling the house to a third party. *Id.* at ¶ 26.

The Statute of Frauds provides that agreements for the sale of real estate " 'shall not be enforced unless they are in writing and signed by the seller.' " *Empire Properties, Inc. v. Equireal, Inc.,* 449 Pa.Super. 476, 674 A.2d 297, 302 (1996) (quoting *Hostetter v. Hoover,* 378 Pa.Super. 1, 547 A.2d 1247, 1250 (1988)); *see also* 33 P.S. § 1; *Golf View Office Campus Partnership v. Resolution Trust Corp.,* No. CIV.A. 96–5597, 1997 WL 667111, * 6 (E.D.Pa. Oct. 2, 1997); *Dalkiewicz v. Redevelopment Authority of Luzerne County,* 403 Pa.Super. 244, 588 A.2d 932, 934 (1991), *appeal denied,* 529 Pa. 649, 602 A.2d 859 (1992). The signed writing can consist of more than one document. *Dalkiewicz,* 588 A.2d at 934. The Statute of Frauds can be satisfied with a memorandum:

> [C]onsisting of several writings, (a) if each writing is signed by the party to be charged and the writings indicate that they relate to the same transaction, or (b) though only one writing is signed if (i) the signed writing is physically annexed to the other writing by the party to be charged, or (ii) the signed writing refers to the unsigned writing, or (iii) it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings.

*Id.* (quoting *Target Sportswear v. Clearfield Foundation,* 327 Pa.Super. 1, 474 A.2d 1142, 1147–48 (1984)(quoting Restatement, Contracts, § 208)). However, " '[w]hether the memorandum relied upon is a single document or consists of several related or connected writings, the complete terms of a valid agreement must be ascertainable therefrom with certainty and must also disclose an intention to be bound.' " *Target Sportswear,* 474 A.2d at 1148 (quoting *Williams v. Stewart,* 194 Pa.Super. 601, 168 A.2d 769, 771–72 (1961) (internal citations omitted)); *see also Linsker v. Savings of America,* 710 F.Supp. 598, 600 (E.D.Pa.1989).

Further, "there is no requirement in the Statute or the decisional law that a signature be in any particular form." *Hessenthaler v. Farzin,* 388 Pa.Super. 37, 564 A.2d 990, 993 (1989). "Instead, the focus has been on whether there is some reliable indication that the person to be charged with performing under the writing intended to authenticate it." *Id.* (surveying case law allowing nontraditional signature to suffice). The Statute is designed to "prevent the possibility of enforcing unfounded fraudulent claims." *Id.* 564 A.2d at 992. Therefore a court " 'should always be satisfied with "some note or memorandum" that is adequate ... to convince the court that there is no serious possibility of consummating fraud by enforcement.' " *Id.* 564 A.2d at 993 (quoting *In Re Estate of Beeruk,* 429 Pa. 415, 241 A.2d 755, 758 (1968)(quoting Corbin on Contracts § 498, at 680–81 (1950))).

In response to Defendant's Motion for Summary Judgment, Plaintiff acknowledges that there is not one writing that is signed by both parties, but instead argues that "the documents in the case, when construed together, indicate that Realen agreed to construct and sell to Middleton a house constructed for him on lot 607 of the Aberdeen development, at a steep discount, with only $3,000 factored in as profit." (Pl.'s Resp. Mem. at 5). The documents Plaintiff refers to are the architectural drawings which indicate the layout and design of the home and are labeled "Middleton Residence"; an Agreement of Sale and Addendum to the Agreement of Sale both of which were drafted and signed by Middleton alone, and which refer to the architectural drawings; and a memorandum from Michael Saba ("Saba"), a Realen employee, which, according to Plaintiff, "provides a monetary breakdown showing that Realen anticipated a profit of $3,000 from the sale of the property to Middleton, which is consonant with the Addendum to Agreement of Sale signed by Middleton." *See* (Pl.'s Resp.Mem. at 5–6).

In order to successfully argue this theory, Plaintiff must show a signed writing. *See Dalkiewicz,* 588 A.2d at 934. Plaintiff argues that the architectural drawings represent a signed writing because Realen's name "prominently displayed on every page" of the architectural drawings is "sufficient to constitute a signature under Pennsylvania law." (Pl.'s Resp.Mem. at 5). However, even if the display of the Realen name on the drawings were sufficient to constitute a signature under Pennsylvania law, Plaintiff has not shown that this "signed" writing was either "physically annexed to the other writing by the party to be charged [Realen in this case]"; or "refers to the unsigned writing," or that "it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings." *Dalkiewicz,* 588 A.2d at 934 (quoting *Target Sportswear,* 474 A.2d at 1147–48 (quoting Restatement, Contracts, § 208)).

For example, the Sales Agreement that Plaintiff signed and which refers to the architectural drawings was prepared by Plaintiff. *See* (Middleton's Dep. at 57–60). Thus, although the drawings are supposedly "physically annexed" to the Sales Agreement, there is no evidence that they were "physically annexed" there by the party to be charged, Realen. Additionally, the drawings do not in any way refer to the Sales Agreement or the Addendum. Finally, after reviewing all of the documents, there is insufficient evidence for the Court to determine that, the "signed" writing (the drawings) was signed with reference to the purchase agreement drafted by Plaintiff.[2]

Moreover, Plaintiff has not shown that " 'the complete terms of a valid agreement' " are ascertainable from a review of all of these documents or that they " 'disclose an intention to be bound.' " *Target Sportswear,* 474 A.2d at 1148 (quoting *Williams,* 168 A.2d at 771–72 (internal citations omitted)). The most important term of the agreement for which Plaintiff has not shown an intention to be bound is the price to be paid. *See Hessenthaler,* 564 A.2d at 994 (identifying consideration as an essential element in a writing sufficient to satisfy Statute of Frauds).

Plaintiff argues that the Addendum to the Agreement of Sale and the memo from Saba establishes the price to be paid as the cost of construction plus a profit of $3,000. However the Addendum includes several other figures, including the lot cost, interest, site overhead, salary & wages, deferred marketing, and settlement expenses. Further, in addition to a column of typed numbers, the Addendum includes handwritten notations indicating different numbers. *See* (Addendum to Agreement of Sale). From this document, giving Plaintiff the benefit of every favorable inference, the Court cannot ascertain with any degree of certainty what Realen, who did not sign this Addendum, understood the sales price to be. Likewise, the memo from Saba does not show an intent to bound or provide any degree of certainty as to the cost of the home. This memo provides a breakdown of costs. However, there is a handwritten notation at the bottom of the memo questioning one of the figures.[3] Finally, Plaintiff testified at deposition that although the parties discussed actual cost plus a $3,000 profit to be the possible cost structure of the deal, that this structure was not stated in writing other than in estimates and budgets. (Middleton Dep. at 75); *see also* (Middleton Dep. at 72) (Plaintiff admits that this cost structure "never got to a contractual form").[4]

---

2. In fact, the Sales Agreement refers to the drawings under the categories of "Initial Options" to be chosen and "CDRs." The sales agreement specifically states that these options "must be chosen *prior to* the execution of this Agreement." *See* (Agreement of Sale ¶ 8) (emphasis added).

3. Plaintiff testified in deposition that some of the numbers listed in Saba's memo reflected items that had not yet been "finalized." *See* (Middleton Dep. at 158).

4. As is discussed more fully in the following section regarding the existence of an oral con-

tract, the Court has been presented with uncontroverted evidence that indicates that Plaintiff himself did not understand there to be a contract in place that could be enforced against him. For example, Plaintiff said to Mike Saba on one occasion that he may decide not to buy the house (Saba Dep. at 32); Plaintiff told the landscaper that he was no longer purchasing the house (Middleton Dep. at 103); and Plaintiff told Realen that their "proposal" for the sale of the house made his purchasing of the house impossible (Letter from Middleton to Realen dated August 1, 1997).

Therefore, we find that as the contract falls within the statute of frauds and Plaintiff has not presented any document or combination of documents sufficient to satisfy the Statute, Partial Summary Judgment will be granted as to Count II of Plaintiff's complaint.

### III. Oral Agreement for Sale of Land

"Under Pennsylvania law, the statute of frauds affects the remedy available to a party, not the validity of the underlying oral contract." *Robbins v. Galbraith*, No. CIV.A. 91–4393, 1993 WL 157725, *2 (E.D.Pa. May 13, 1993)(citing *Meiksin v. Howard Hanna Co.*, 404 Pa.Super. 417, 590 A.2d 1303, 1307 (1991)). Therefore, a party cannot claim monetary damages for "the loss of the benefit of the bargain under an oral contract falling within the purview of the statute of frauds." *Id.* (internal citations omitted). However, "a party injured by another party's breach of ... an oral agreement [rendered unenforceable by the statute of frauds] may have an action for monetary damages based on 'the expenses incurred on the faith of the contract.'" *Id.* (quoting *Polka v. May*, 383 Pa. 80, 118 A.2d 154 (1955) ("holding that the measure of damages for the breach of an oral agreement for the sale of land was money paid on account of the sale and 'expenses incurred on the faith of the contract'")); *see also Empire Properties, Inc. v. Equireal, Inc.*, 449 Pa.Super. 476, 674 A.2d 297, 302 (1996)(same) (internal citations omitted); *Hostetter v. Hoover*, 378 Pa.Super. 1, 547 A.2d 1247, 1250 (1988) (same).

Thus, we must now determine whether the facts, when viewed in the light most favorable to the Plaintiff, establish the existence of an oral contract for the sale of the home. "The burden of proving the existence of a contract lies with the party seeking to establish it." *Geiger Associates Plumbing, Heating & Air Conditioning, Inc. v. Geiger Services, Inc.*, No. CIV.A. 98–1315, 1998 WL 242598, *1 (E.D.Pa. May 14, 1998) (citing *Boyle v. Steiman*, 429 Pa.Super. 1, 631 A.2d 1025, 1033 (1993)); *see also Johnston The Florist, Inc. v. TEDCO Construction Corp.*, 441 Pa.Super. 281, 657 A.2d 511, 516 (1995). "Further, the existence of an oral contract must be established by 'clear and precise' evidence." *Id.*; *see also Suppa v. Lee Myles Associates, Corp.*, No. CIV.A. 89–4179, 1990 WL 109891, *4 (E.D.Pa. July 30, 1990)(same); *Carefoot v. Ecolaire Inc.*, No. CIV.A. 87–1212, 1989 WL 51759, *11 (E.D.Pa. May 15, 1989)(same); *see generally Tuman v. Genesis Associates*, 935 F.Supp. 1375, 1389 (E.D.Pa.1996)(listing elements necessary to form a contract). " 'Under Pennsylvania law, the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms, and whether the terms are sufficiently definite to be specifically enforced.'" *Golf View Office*, 1997 WL 667111 at *4 (quoting *Channel Home Centers Division of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 298–99 (3d Cir.1986)); *see also Johnston The Florist*, 657 A.2d at 516.

In certain circumstances " '[a] contract can be formed even if many of the particulars or specifics have not been discussed or agreed upon.'" *Id.* (quoting *Herzog Oil Field Serv., Inc. v. Otto Torpedo Co.*, 391 Pa.Super. 133, 570 A.2d 549, 551 (1990)). However, " '[a] contract for the sale of land must be in such form which properly expresses the intention of the parties and must be definite and certain as to all terms.'" *Id.* (quoting *Southwest Germantown Community Dev. Corp. v. Concerned Neighbors of Germantown*, 409 Pa.Super. 412, 598 A.2d 63, 64–65 (1991)). Further, " '[i]t is hornbook law that evidence of preliminary negotiations or an agreement to enter into a binding contract in the future does not alone constitute a contract.'" *Id.* (quoting *Channel Home Centers*, 795 F.2d at 298 (citations omitted)).

In the instant case, there is no doubt that the parties were engaged in negotiations for the construction and sale of a home and that selections concerning the home had been made by Plaintiff and construction of the home had begun. However, Plaintiff has not presented sufficient evidence that an agreement concerning sale of the home had been reached or that either party intended to be bound by the terms now suggested by Plaintiff as the oral agreement. Plaintiff stated at deposition that the cost structure purportedly agreed upon, actual cost of construction

plus a $3,000 profit, "never got to a contractual form." *See* (Middleton Dep. at 75). Plaintiff now attempts to rely on what admittedly were estimates and budgets as evidence of an oral agreement. *Id.* Further, there is uncontroverted evidence in the record before us that Plaintiff did not have an intent to be bound by the agreement. For example, on one occasion Plaintiff told Saba that the price was getting too high on the home and that "[i]f it gets any higher, even as is, I might not buy the house." (Saba Dep. at 32). Further, Plaintiff testified that he told the landscaper that he "was no longer going to be purchasing the home." (Middleton Dep. at 102–03). Finally, in a letter to Defendant, Plaintiff stated that "[t]he construction of my personal house was to be a real benefit to me and the proposal you gave me yesterday compared to the one we originally discussed made that purchase impossible." (Middleton Letter to Realen dated August 1, 1997).

The facts presented establish that negotiations for the purchase of this home were ongoing but that the parties had not agreed upon a price for the home or manifested an intent to be bound. Therefore, we find that Plaintiff has not met his burden of establishing with "clear and precise" evidence that an oral contract existed. *See Johnston the Florist,* 657 A.2d at 516.

### IV. *Amount in Controversy*

▉ Defendant argues that if this Court grants partial summary judgment as to Count II of Plaintiff's complaint, the jurisdictional amount in controversy under 28 U.S.C. § 1332 will not be met. Defendant thus asks this Court to dismiss the remainder of Plaintiff's claims.

▉ In a diversity action, the amount in controversy is determined at the time the action is commenced. *Gimbel Holding Co. v. Hirschman,* No. CIV.A. 95–9591, 1997 WL 724562, *2 (S.D.N.Y. Nov. 19, 1997). A grant of partial summary judgment, which brings a plaintiff's recovery to an amount less than the amount in controversy, does not necessitate dismissal of the remaining claims. *See Pelesh v. Polyphase Corp.,* No. CIV.A. 95–1355, 1997 WL 364477, *5 (E.D.Pa. June 23, 1997)("no merit to the contention that a fed-

eral court no longer retains jurisdiction over a case in which, after an award of partial summary judgment to the defendant, the plaintiff's remaining claims fall below the jurisdictional amount"); *McGeehan v. Teco, Inc.,* No. CIV.A. 92–2385, 1993 WL 276955, *5 (E.D.Pa. July 19, 1993); *see also New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.,* 101 F.3d 1492, 1510 (3d Cir.1996); *Lombard v. Economic Development Administration of Puerto Rico,* No. CIV.A. 94–1050, 1998 WL 118164, *1 (S.D.N.Y. Mar. 17, 1998); *Gimbel Holding Co. v. Hirschman,* No. CIV.A. 95–9591, 1997 WL 724562, *2 (S.D.N.Y. Nov. 19, 1997); *Alter v. Bogoricin,* No. CIV.A. 97–0662, 1997 WL 691332, *3 (S.D.N.Y. Nov. 6, 1997); *Nieves Domenech v. Dymax Corp.,* 952 F.Supp. 57, 66–67 (1996); *Zeller Corp. v. Federal–Mogul Corp.,* No. CIV.A. 95–7501, 1996 WL 903951 (N.D.Ohio July 25, 1996). "Even when a plaintiff's allegations leave 'grave doubt about the likelihood of recovery of the requisite amount,' dismissal is not warranted unless it appears ' "to a legal certainty that the claim is really for less than the jurisdictional amount...." ' " *Alter,* 1997 WL 691332 at *3 (internal citations omitted); *see also Spectacor Management Group v. Brown,* 131 F.3d 120, 122 (3d Cir. 1997) (to challenge jurisdiction the defendant must show to "a legal certainty that the plaintiff cannot recovery that amount").

In the instant case, from the pleadings it was not possible to tell to a degree of legal certainty that Plaintiff would be unable to recover the amounts alleged in Count II. Therefore, we will retain jurisdiction of the case.

### V. *Plaintiff's Motion for Partial Summary Judgment*

Plaintiff filed a motion for partial summary judgment on Count I of the amended complaint. Count I asserts a breach of contract claim and seeks recovery of the $65,000 Defendant allegedly guaranteed Plaintiff as a bonus amount. Plaintiff asserts that he is entitled to summary judgment because the offer of employment letter from Defendant specifically states that Plaintiff would be guaranteed a bonus of $65,000 for the first

year and Defendant has admitted that the author of the letter was authorized to make such a representation. Plaintiff, therefore, argues that there is no genuine issue of material fact.

Defendant responds that the offer letter specifically refers to another document, the standard bonus compensation agreement, which indicates that if employment is terminated "for cause," as defined in the agreement, the employee will forfeit all accrued but unpaid bonus compensation. Defendant argues that there is a genuine issue of material fact regarding whether Plaintiff was terminated for cause and therefore summary judgment is not appropriate.

It is a well-settled principle of contract construction that terms are construed *contra proferentum*, that is, against the drafter. (citations omitted). It is equally well settled that a contract must be construed, if at all possible, to give effect to all of its terms. (citations omitted). Finally, when a contract refers to a separate document, a court may examine the language of the other document to ascertain the intent of the parties. (citations omitted).

*West Dev. Group v. Horizon Financial*, 405 Pa.Super. 190, 592 A.2d 72, 75 (1991).

█ While the language of the offer letter referred to by Plaintiff states that Defendant would "guarantee that [Plaintiff's] bonus for the first 12 months of employment will not be less that $65,000," the letter also provides that "[a]ttached to this letter is a sample copy of the Company's standard bonus compensation agreement." [5] (Offer Letter to Middleton from Realen dated July 23, 1996). The standard bonus compensation agreement states that "[s]hould your employment terminate 'for cause', you will forfeit all accrued but unpaid bonus compensation." (Standard Bonus Compensation Agreement attached to Def.'s Motion for Summary Judgment at Ex. D). The agreement further defines "for cause."

The record establishes that there is a genuine issue of material fact concerning whether Plaintiff was terminated for cause and thus whether Plaintiff is entitled to recover the $65,000 bonus amount. Therefore, Plaintiff's Motion for Partial Summary Judgment as to Count I is denied.

## CONCLUSION

An appropriate Order follows.

## ORDER

AND NOW, this 27th day of October, 1998, upon consideration of Defendant's Motion for Partial Summary Judgment as to Count II and Motion to Dismiss for Lack of Subject Matter Jurisdiction and Plaintiff's response thereto and Plaintiff's Motion for Partial Summary Judgment as to Count I and Defendant's response thereto, it is hereby ORDERED as follows:

1) Defendant's Motion for Partial Summary Judgment as to Count II is GRANTED;

2) Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is DENIED; and

3) Plaintiff's Motion for Partial Summary Judgment as to Count I is DENIED.

---

**5.** Plaintiff argues that he never received the standard bonus compensation agreement referenced in his offer letter and upon which Defendant relies. However, the bonus agreement is specifically mentioned in the offer letter Plaintiff admits receiving. Therefore, the Court can consider this agreement in determining the intent of the parties. *See West Dev. Group*, 592 A.2d at 75.