PENNSYLVANIA SHIP SUPPLY CO., INC., Plaintiff,

v.

TRANSCARIBBEAN MARITIME CORP., Defendant and Third–Party Plaintiff,

v.

X–PRESS FREIGHT FORWARDERS, INC., Third–Party Defendant.

Civ. No. 92–1752 (JAF).

United States District Court, D. Puerto Rico.

June 25, 1993.

Enrique M. Bray, Law Office of Harvey B. Nachman, San Juan, P.R., for plaintiff.

Francisco G. Bruno, María de los Angeles Diez, Sweeting Gonzalez Cestero & Bruno, San Juan, P.R., for defendant.

Ana López–Prieto, Montañez & Alicea, San Juan, P.R., for X–Press.

### OPINION AND ORDER

FUSTE, District Judge.

Plaintiff, Pennsylvania Ship Supply Co., Inc. ("Pennsylvania Ship Supply"), is suing

defendant, Transcaribbean Maritime Corp. ("Transcaribbean"), under 31 L.P.R.A. § 5141, for negligence. Jurisdiction is based upon 28 U.S.C. § 1332, with plaintiff alleging that there is complete diversity between the parties and that the claim is worth more than $50,000. Defendant, after filing a third-party complaint against X–Press Freight Forwarders, Inc. ("X–Press"), has now filed for summary judgment against plaintiff. Plaintiff, Pennsylvania Ship Supply, has failed to oppose. We find that there is no evidence to support plaintiff's cause of action and, therefore, grant defendant's summary judgment motion.

## I.

### Facts

Pennsylvania Ship Supply entered into a contract with Semih Sohtorik Management and Agency, Inc. ("Semih") to act as the ship chandler for a ship owned by Semih, the M/V BALTIC TRANSPORTER. The ship chandler sells, organizes, and prepares the supplies and appurtenances for the vessel. Transcaribbean was the Puerto Rico agent for the ship's charterer, Tigris International. The two companies apparently knew of each other through their connection to the M/V BALTIC TRANSPORTER; however, there was no direct contractual relationship between Pennsylvania Ship Supply and Transcaribbean. Despite the lack of a formal relationship, Pennsylvania Ship Supply called Transcaribbean to enlist its help in delivering some of the goods to the vessel. The M/V BALTIC TRANSPORTER was scheduled to arrive in San Juan Harbor in Puerto Rico on February 23, 1993, and remain for two days. According to plaintiff's agents, Transcaribbean agreed to deliver freight to the M/V BALTIC TRANSPORTER while it was in the San Juan harbor if the freight was delivered to Transcaribbean at the addresses specifically given to Pennsylvania Ship Supply for that purpose. Docket Document No. 13, *Exhibits I & II*. One of the addresses was a box number and the other was defendant's offices on a pier in Puerta de Tierra, San Juan. There was never any discussion that these services would be rendered for a fee. Docket Document No. 13, *Exhibits I & II*.

Problems arose over the delivery of three reels of steel wire rope. This steel wire rope had been purchased from Atlantic Cordage Corporation ("Atlantic") in New Jersey. Pennsylvania Ship Supply had instructed Atlantic to send the steel wire rope to the address specified by Transcaribbean, namely M/V BALTIC TRANSPORTER, c/o Transcaribbean Maritime, Frontier Base Pier, Puerta de Tierra. Atlantic contracted X–Press to deliver the steel wire rope. The freight bill specified delivery to M/V BALTIC TRADER, c/o Transcaribbean Maritime, Frontier Base Pier, Puerta de Tierra. There was no commercial invoice included with the steel wire rope. When the steel wire rope arrived in Puerto Rico on Tuesday, February 18, 1993, X–Press called Transcaribbean and informed it that the steel wire rope had arrived C.O.D., whereupon Transcaribbean refused to accept delivery. Transcaribbean promptly called Pennsylvania Ship Supply with the information that the steel wire rope had arrived with payment pending. We assume Pennsylvania Ship Supply called Atlantic because after having been contacted by Atlantic, X–Press issued a corrected freight bill indicating payment.

By Friday, which was February 21, 1993, the steel wire rope had still not been delivered to Transcaribberan. The non-delivery was beginning to become a critical matter as the scheduled date of departure for the M/V BALTIC TRANSPORTER had been changed. The vessel was now only staying in San Juan for one day, and February 23, 1993, the new date of departure, was a Sunday. Who called whom is not clear from the record, but somehow it was discovered that the steel wire rope had not been cleared by the Commonwealth Excise Tax Bureau. On Friday, February 21, 1993, X–Press contacted the Excise Tax office at the request of Pennsylvania Ship Supply. X–Press discovered that to clear the steel wire rope, the Excise Tax office required the original commercial invoice which had not been included with the shipment. X–Press then contacted Transcaribbean, which tried to assist in obtaining clearance from the Excise Tax office, but all efforts failed. The steel wire rope was never delivered to Transcaribbean and, consequent-

ly, never delivered to the M/V BALTIC TRANSPORTER.

## II.

### *Discussion*

#### A. *Summary Judgment*

Defendant has moved for summary judgment under Fed.R.Civ.P. 56. By bringing a motion for summary judgment, the defendant is asserting that there is no dispute as to the material facts and that "[t]he moving party is 'entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Plaintiff has failed to oppose the summary judgment motion. Fed.R.Civ.P. 56(e) states that "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading." In this case, where the defendant has adequately documented its argument with affidavits by plaintiff's employees as to the nature of the agreement between the two organizations, we must accept those as the facts upon which to decide this case. Those facts which are clearly established by defendant's summary judgment motion are that the two parties agreed that the items would be delivered to Transcaribbean and that then it would undertake to deliver the steel wire rope to the vessel. The other facts which are important, namely that the package arrived C.O.D. and that the package did not clear customs because no commercial invoice was included are not in dispute. Since there are no factual issues of substance in controversy, our inquiry must be an examination of the legal issues involved.

#### B. *Contract Negligence*

Plaintiff is alleging that Transcaribbean acted negligently in failing to ensure that the package was delivered to the M/V BALTIC TRANSPORTER. The Civil Code of Puerto Rico provides that "a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 L.P.R.A. § 5141. However, "[t]hose who in fulfilling their obligations are guilty of fraud, negligence, or delay, ... shall be subject to indemnity for the losses and damages caused thereby." 31 L.P.R.A. § 3018. The Supreme Court of Puerto Rico has found that section 5141 applies only when "no prior obligation exists between the person causing the damage and the one receiving it." *Arroyo v. Caldas,* 68 P.R.R. 639, 641 (1948); *see also, Prieto v. Maryland Casualty Co.,* 98 P.R.R. 583, 608 (1970); *Ocasio–Juarbe v. Eastern Airlines, Inc.,* 902 F.2d 117 (1st Cir.1990). "It is only when the obligation is not of a contractual nature, that is, only when an illicit act or omission involving fault or negligence is present, that Section 1802 of our Civil Code, 31 L.P.R.A. § 5141, is of application." *Stainless Steel & Metal Mfg. Corp. v. SACAL V.I., Inc.,* 452 F.Supp. 1073, 1081 (D.P.R.1978). "The fault or negligence of the debtor consists of the omission of the steps which may be required by the character of the obligation, and which may pertain to the circumstances of the persons, time and place." 31 L.P.R.A. § 3021. Section 3018 "borrows many of its characteristics from the principles of *ex delicto* civil liability as contained in ... Sec. 5141." *Fojo v. American Express Co.,* 554 F.Supp. 1199, 1201 (D.P.R. 1983).

While the distinction between ex delicto and ex contractu actions is significant for purposes of statute of limitations and damages, among other things, the standard for negligence, when actually applied, is similar to the tort negligence statute.

■ It is clear that a quasi-contract existed here between plaintiff and Transcaribbean, despite defendant's emphasis on the fact that there was no discussion of a fee.[1] Qua-

---

1. In Puerto Rico, "[c]ontracts are perfected by mere consent." 31 L.P.R.A. § 3375. Under the law of Puerto Rico, a bilateral obligation assumed by each one of the parties to the contract has, as its consideration, the promise offered in exchange. *United States v. Pérez,* 528 F.Supp. 206 (D.P.R.1981). Therefore, it appears that the agreement in this case is a quasi-contract specifically regulated by the Civil Code, 31 L.P.R.A. § 5091. The mention of a specific fee is not important. The burden of proof to establish a contract rests on the party asserting the breach. 31 L.P.R.A. § 3261. While the plaintiff in this case presented no evidence, the defendant's evidence suffices to show the existence of a quasi-contract and the absence of a breach.

si-contracts are "licit and purely voluntary acts by which the author thereof becomes obligated with regard to a third person, and, sometimes, by which there results a reciprocal obligation between the parties concerned." 31 L.P.R.A. § 5091. The agreement between the parties determines the limit of the duty owed by one party to the other. The obligations of a contract are determined by the intentions of the parties. 31 L.P.R.A. § 3474. And it is within those limits that the defendant must have behaved as a prudent person.

In this case, Pennsylvania Ship Supply was to have the steel wire rope delivered to the addresses provided by Transcaribbean. From its offices, Transcaribbean agreed to deliver the steel wire rope to the M/V BALTIC TRANSPORTER. The agreement did not include a requirement that Transcaribbean assume responsibility for the steel wire rope as soon as it physically arrived in Puerto Rico. Given the effort which would have been required in dealing with a package which was still in the hands of the delivery company, it does not appear negligent that Transcaribbean did not undertake to ensure the delivery to their own offices. It was entirely reasonable for them to rely upon the fact that a package being delivered to a particular address would arrive there.

■ Although the time constraints imposed by the early departure of the M/V BALTIC TRANSPORTER created a situation of greater urgency, we do not have any evidence that Transcaribbean knew of the accelerated deadline before any other party and neglected to act. Therefore, holding Transcaribbean to accept a C.O.D. delivery and to be responsible for clearing the steel wire rope with the Excise Bureau would be requiring actions outside of the boundaries of the contract. The contract envisioned the delivery of the steel wire rope to Transcaribbean directly at its pier facilities. Transcaribbean communicated with Pennsylvania Ship Supply each time there was a problem. To clear the steel wire rope with the Excise

Bureau would have required the commercial invoice—which was not even included. It was the responsibility of Pennsylvania Ship Supply to assure that the package was properly delivered. Transcaribbean did not act negligently[2] in failing to accept the C.O.D. delivery or failing to clear the steel wire rope with the Excise Bureau. This went beyond its quasi-contract obligations with plaintiff in the management of plaintiff's business.

### III.

#### Conclusion

We **GRANT** defendant's motion for summary judgment and **DISMISS** the complaint and the third-party complaint.

**IT IS SO ORDERED.**

---

**2.** See Kaiser v. Armstrong World Industries, Inc., 678 F.Supp. 29, 31 n. 1 (D.P.R.1987) (quoting Ramos v. Carlo, 85 P.R.R. 337, 342 (1962)). Negligence, in the context of a contract or quasi-contract, is established only when the negligent party fails to anticipate or foresee "the rational consequences of an act which a prudent person could have foreseen under the same circumstances." Id.