Sixto A. NIEVES DOMENECH,
et al., Plaintiffs,

v.

DYMAX CORPORATION, Defendant.

Civil No. 95–2226 (HL).

United States District Court,
D. Puerto Rico.

Dec. 22, 1996.

Javier A. Morales–Ramos, Hato Rey, PR, for plaintiffs.

William E. Estrella–Lopez–De–Vi, San Juan, PR, William H. Bright, Eric Watt–Wiechmann, Cummings & Lockwood, Hartford, CT, for defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is Defendant Dymax Corporation's motion for partial summary judgment[1] in this action for damages under Puerto Rico's Sales Representatives Act,

---

1. Dymax's motion, filed on June 24, 1996, was a motion for partial judgment on the pleadings. *See* docket no. 10. Because the motion mentioned exhibits outside the pleadings, in an order dated July 12, 1996, the Court converted it to a motion for partial summary judgment. *See* docket no. 13. Because Dymax failed to attach the exhibits, the Court denied the motion without prejudice. Subsequent to the filing of its original motion, Dymax did submit the supporting exhibits. *See* docket no. 12. The Court then ruled that it would reconsider Dymax's original motion. *See* docket no. 15. Plaintiffs had filed an opposition to the original motion. *See* docket no.

14. Because the Court had converted the original motion to a motion for summary judgment, Plaintiffs were granted leave to supplement their opposition. *See* docket no. 15. On August 5, 1996, Plaintiffs filed a supplement to their opposition. *See* docket no. 16. Subsequently, Dymax filed a reply to Plaintiffs' opposition, and Plaintiffs filed a sur-reply. *See* docket nos. 21 & 26. Thus, in resolving this matter, the Court has considered the following materials: Dymax's motions filed at docket numbers 10, 12, and 21, and Plaintiffs' motions filed at docket numbers 14, 16, and 26.

commonly known as "Law 21."[2] Dymax is a corporation engaged in the manufacture of industrial products, including "UV adhesives" which are used in the manufacture of computers and the assembly of medical devices. Plaintiffs are Sixto Nieves Domenech ("Nieves"), his wife Rosa Quiñones Cecilio ("Quiñones"), and their conjugal partnership. Plaintiffs are also bringing claims for breach of contract and for damages pursuant to the Puerto Rico Civil Code's Article 1802 on negligence.[3] This Court's jurisdiction is based on diversity of the parties.[4]

The Court reviews the record in the light most favorable to Plaintiffs and draws all reasonable inferences in their favor. *See LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993). In their complaint, Plaintiffs allege that on August 15, 1986, Nieves—under ERO Technology—entered into a sales agreement ("the Agreement") with Dymax; that the Agreement appointed Nieves as Dymax's sole agent for certain of the company's products in Puerto Rico; that starting in 1986 Nieves visited prospective clients to promote Dymax's products; that at the end of 1988, Nieves, now doing business as "Engineering Consulting Group," continued to be the Puerto Rico sales agent for Dymax; that Nieves' efforts to promote Dymax's products had developed large sales volumes by 1995; and that Dymax terminated the Agreement in 1995 without just cause, in violation of Law 21.[5]

After Dymax filed its motion for partial summary judgment, Plaintiffs filed an opposition on July 12, 1996.[6] In their opposition—which was filed five months after the Court's deadline[7] for amending the complaint—Plaintiffs claimed that the complaint was mistaken. In the complaint, Plaintiffs

had alleged that in 1988 Nieves, now doing business as Engineering Consulting Group, continued to be a sales agent for Dymax. In their opposition, Plaintiffs claimed that the correct date is 1991.[8] They also claimed that the Agreement of August 15, 1986, was between Dymax and ERO Technology. Plaintiffs further claimed in their opposition that at an unspecified date between 1986 and 1991, ERO Telecom & Industrial Supplies, Inc. became Dymax's exclusive sales agent under the Agreement.[9] Plaintiffs also claimed in their opposition that at the end of 1991, Nieves became Dymax's exclusive Puerto Rico sales agent under the Agreement "under the same terms as the Agreement dating back to 1986 between Dymax and ERO Technology."[10] Nieves was president and manager of ERO Technology.[11] He was also, along with three other individuals, a shareholder of ERO Technology.[12] He was also the company manager of ERO Telecom and a shareholder with an unspecified share in the corporation.[13] According to Plaintiffs, then, the only difference in the Agreement since it was first entered into in 1986 is the identity of the Puerto Rico sales agent.

In its motion for partial summary judgment, Dymax argues that Law 21 does not cover the Agreement; that therefore Plaintiffs do not have a claim under that statute; and that accordingly, Plaintiffs' claim under Article 1802 must also fail. Plaintiffs have opposed the motion. For the reasons set forth below, the Court grants Dymax's motion.

## DISCUSSION

*1. The Law 21 claim*

Summary judgment is appropriate if "there is no genuine issue as to any material

---

2. P.R.Laws Ann. tit. 10, §§ 279–279h (Supp. 1991).

3. P.R.Laws Ann. tit. 31, § 5141 (1991).

4. 28 U.S.C.A. § 1332 (West 1993).

5. Docket no. 1, at 2–9.

6. Docket no. 14.

7. On December 20, 1995, the Court issued a scheduling order setting February 5, 1996, as a deadline for adding claims or parties. Docket no. 6.

8. Docket no. 14, at 1.

9. Docket no. 14, at 3.

10. Docket no. 14, at 3.

11. Docket no. 26, at 6.

12. Docket no. 26, at 5.

13. Docket no. 26, at 2–3.

fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed. R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Fed.R.Civ.P. 56(e); *LeBlanc*, 6 F.3d at 841. The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). An issue is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

 Plaintiffs are bringing a claim under Puerto Rico's Law 21. This statute prohibits a principal from terminating its agreement with a sales representative without just cause. P.R.Laws Ann. tit. 10, § 279a. Law 21 took effect on December 5, 1990, and it does not apply to agreements that were entered into prior to that date. *See* 1990 *Acts and Resolutions of Puerto Rico*, December 5, 1990, No. 21, sec. 10, at 1501; *Tavarez v. Champion Products, Inc.*, 903 F.Supp. 268, 272 (D.P.R.1995). In their complaint, Plaintiffs allege that on August 15, 1986, Nieves—under ERO Technology—entered into the Agreement with Dymax; that the Agreement made Nieves the sole agent of Dymax in Puerto Rico; and that starting in 1986 Nieves visited prospective clients to promote Dymax's products.[14] A litigant's assertions of fact in a pleading constitutes a judicial admission by which the party is normally bound throughout the proceeding. *Schott*

*Motorcycle Supply v. Am. Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir.1992); *Davis v. A.G. Edwards and Sons, Inc.*, 823 F.2d 105, 107–08 (5th Cir.1987) (Holding that plaintiffs were bound by the assertions of the complaint even though plaintiffs subsequently submitted documentary evidence that contradicted these assertions). Therefore, in the present case Plaintiffs are bound by their version in the complaint that Nieves' relationship with Dymax dated back to 1986. Because the agreement was entered into in 1986, it is not covered by Law 21.

 In their opposition to Dymax's motion for partial summary judgment, Plaintiffs claim that the allegation in the complaint that in 1988 Nieves was doing business as Engineering Consulting Group continued to be Dymax's sales agent is a "mistake."[15] Plaintiffs allege that the correct date is 1991, not 1988. In their opposition Plaintiffs request that the complaint be amended accordingly. Plaintiffs filed their opposition with this allegation of the mistaken date on July 12, 1996. In a scheduling order issued on December 20, 1995, the Court set February 5, 1996, as the deadline for amending the complaint.[16] It is essential that a court's deadlines be followed in order to allow for the proper management of the court's caseload. *See Serrano–Perez v. FMC Corp.*, 985 F.2d 625, 628 (1st Cir.1993) (expert witness obtained beyond deadline excluded from case); *Thibeault v. Square D Co.*, 960 F.2d 239, 247 n. 7 (1st Cir.1992) ("we heartily endorse the utilization of discovery closure dates ... as a case management tool."); *Riofrio Anda v. Ralston Purina, Co.*, 959 F.2d 1149, 1154–55 (1st Cir.1992) (denial of motion to amend complaint because plaintiff moved to amend the complaint two months after deadline in the scheduling order had passed); *Barreto v. Citibank, N.A.*, 907 F.2d 15, 16 (1st Cir.1990) ("discovery orders, other pre-trial orders, and, indeed, all orders governing the management of a case are enforceable under pain of sanction for unjustifiable violation"); *Corretjer Farinacci v. Picayo*, 149 F.R.D. 435, 438 (D.P.R.1993) (disregard of judge's sched-

---

14. Docket no. 1, at 2–4.

15. Docket no. 14, at 1.

16. Docket no. 6.

uling order and local rules of the district justifies sanctions). Because Plaintiffs' request to amend the complaint through their opposition of July 12, 1996, was not filed until more than five months after the Court's deadline for amending the complaint had passed, the Court hereby denies it.

■■■ Even if the Court were to consider Plaintiffs' claim that in 1991—not 1988—Nieves continued to be Dymax's sales agent, the Court would still find that Law 21 does not apply. Plaintiffs argue that in 1991 there was a novation of the Agreement and that therefore Law 21 does apply to the present case. The Civil Code recognizes two types of novations: extinctive and modificatory. *See Warner Lambert Co. v. Tribunal Superior*, 101 P.R.Dec. 378, 390–91, 1 Official Translations 527, 545–47 (1973); *Blasini v. Beech–Nut Life Savers*, 104 P.R.Dec. 570, 580, 4 Official Translations 796, 809 (1976) (Trías Monge, C.J., concurring); 3 José Castán Tobeñas, *Derecho Civil Español, Comun y Foral*, at 483–84 (16th ed. 1992); I–2 José Puig Brutau, *Fundamentos de Derecho Civil*, at 458–60 (2d ed. 1976). An extinctive novation extinguishes the old obligation and creates a new one. *Warner Lambert*, 101 P.R.Dec. at 391, 1 Official Translations at 546–47. In contrast, a modificatory novation simply modifies, but does not extinguish, the original agreement. *Teachers Annuity v. Sociedad de Gananciales*, 115 P.R.Dec. 277, 285–86, 15 Official Translations 372, 382 (1984); *Warner Lambert*, 101 P.R.Dec. at 390–91, 1 Official Translations at 546–47; *Miranda Soto v. Mena Eró*, 109 P.R.Dec. 473, 478, 9 Official Translations 628, 634–35 (1980); *see also* Irma Alicia Rodríguez, *La Novación Objetiva entre la Extinción y la Modificación en la Jurisprudencia Puertorriqueña*, 49 Revista del Colegio de Abogados de Puerto Rico, No. 2, at 3–4 (1988).

■■■ An extinctive novation's occurrence is never presumed. *Constructora Bauzá, Inc. v. Luis Garcia López*, 91 JTS 99, 9078 (1991) (quoting *Warner Lambert*, 101 P.R.Dec. at 389, 1 Official Translations at 544); *Ballester Hermanos, Inc. v. Campbell Soup Co.*, 797 F.Supp. 103, 107 (D.P.R.1992). It must be established "without any trace of doubt." *Warner Lambert*, 101 P.R.Dec. at

389, 1 Official Translations at 544. The extinctive novation may occur in one of two ways. P.R.Laws Ann. tit. 31, § 3242 (1990). First, the parties may expressly state their intention to create a new agreement. *Marina Indus. Inc. v. Brown Boveri Corp.*, 114 P.R.Dec. 64, 70–77, 14 Official Translations 86, 95–103 (1983); *Ballester Hermanos*, 797 F.Supp. at 107. If such an intention has been expressly stated, there will be an extinctive novation even though the original agreement has only been modified slightly. *Marina Indus.*, 114 P.R.Dec. at 70–77, 14 Official Translations at 95–103; *Warner Lambert*, 101 P.R.Dec. at 390, 1 Official Translations at 545; *Ballester Hermanos*, 797 F.Supp. at 107.

■■■ The second manner by which an extinctive novation may occur is through a new agreement that is incompatible with the original one. *Miranda Soto*, 109 P.R.Dec. at 479, 9 Official Translations at 635–36; *G. & J., Inc. v. Doré Rice Mill, Inc.*, 108 P.R.Dec. 89, 91, 8 Official Translations 90, 90 (1978). The new agreement must be absolutely incompatible "in all points" to the original. *G. & J.*, 108 P.R.Dec. at 96, 8 Official Translations at 95; *Ballester Hermanos*, 797 F.Supp. at 107. The change in the new agreement must be so radical in nature as to make the new and old agreements unable to coexist and to make them mutually excludable. *G. & J.*, 108 P.R.Dec. at 96, 8 Official Translations at 95; *Francisco Garraton, Inc. v. Lanman & Kemp–Barclay*, 559 F.Supp. 405, 407 (D.P.R.1983). The mere modification of a principal condition of the agreement will not, by itself, constitute an extinctive novation if the parties have not expressly stated their intention to novate. *Warner Lambert*, 101 P.R.Dec. at 390, 1 Official Translations at 545; *Fed. Deposit Ins. Corp. v. P.L.M. Int'l Inc.*, 834 F.2d 248, 251 (1st Cir.1987).

In the present case, Plaintiffs claim that their complaint is mistaken and that it should be amended to read that in 1991—not 1988—Nieves, doing business as Engineering Consulting Group, continued to be Dymax's sales agent in Puerto Rico under the Agreement. Even if the Court were to consider this amendment to the complaint, however, dis-

missal of the Law 21 claim would still be warranted. With this correction of Plaintiffs' alleged mistake, their complaint contains the following allegations: that in 1986 Nieves, under ERO Technology, entered into the Agreement with Dymax; that the Agreement appointed Nieves as Dymax's sole agent in Puerto Rico for certain of its products; that starting in 1986 Nieves visited prospective clients to promote Dymax's products; that at the end of 1991, Nieves, now doing business as "Engineering Consulting Group," continued to be the Puerto Rico sales agent for Dymax; and that Nieves' efforts to promote Dymax's products had developed large sales volumes by 1995.[17]

 Plaintiffs claim that this change in the identity of the sales agent constitutes an extinctive novation. Despite the correction of the date from 1988 to 1991, however, Plaintiffs continue to allege that from the Agreement's beginning in 1986 Nieves promoted Dymax's products and acted as its sales agent in Puerto Rico.[18] According to the Plaintiffs, the only change in the Agreement has been the identity of the sales agent. Plaintiffs rely on Article 1157 of the Puerto Rico Civil Code which provides that an obligation may be modified (1) by a change in its object or principal conditions; (2) "by substituting the person of the debtor;" and (3) by subrogating a third person in the creditor's rights. P.R.Laws Ann. tit. 31, § 3241 (1991). The Puerto Rico Supreme Court in *Warner Lambert*, however, noted that Article 1157 describes actions by which an obligation *may* be *modified;* Article 1157 does not say that such actions will automatically result in the extinction of an obligation. 101 P.R.Dec. at 390, 1 Official Translations at 545–46. A modification does not extinguish the original agreement. *Id.* at 390–91, 1 Official Translations at 545–47; *Miranda Soto,* 109 P.R.Dec. at 478, 9 Official Translations at 634–35. Moreover, although the substitution of a party to an agreement modifies the original agreement, the substitution will not, by itself, cause an extinctive novation unless the parties have expressly stated their intention to do so or there is a complete incompatibility.

*P.L.M. Int'l,* 834 F.2d at 251; *see also Blasini,* 104 P.R.Dec. at 580–81, 4 Official Translations at 809–10 (1976) (Trías Monge, C.J., concurring) (The only modification in a sublease was that the owner of the property assumed all the rights and obligations of the sublessor; this change did not constitute an extinctive novation).

The Puerto Rico Supreme Court's opinion in *Marina Industrial* is instructive. In that case, Marina Electrical Supplies entered into a distribution contract with Brown Boveri in 1960. *Marina Ind.,* 114 P.R.Dec. at 67, 14 Official Translations at 92. In 1969, Marina Electrical merged with two other corporations to form Marina Industrial. *Id.* In 1970 Marina Industrial and Brown Boveri entered into another distribution contract. *Id.* at 67–68, 14 Official Translations at 92. The 1970 contract differed from the 1960 contract in the following ways: (1) Marina Electrical Supplies executed the 1960 contract and Marina Industrial executed the 1970 one; (2) the 1960 contract gave Marina Electrical the distribution area of Puerto Rico and the Dominican Republic, while the 1970 contract added the Virgin Islands to this area; (3) the 1970 contract changed from 30 to 90 days the amount of anticipation required for a party to terminate the contract; and (4) the 1970 contract added a noncompete clause. *Id.* at 76, 14 Official Translations at 102–03. The Puerto Rico Supreme Court stated that these changes, by themselves, were not sufficient to extinctively novate the 1960 contract. *Id.* The changes did not create an absolute incompatibility as required by the Civil Code. *Id.* at 76–77, 14 Official Translations at 102–03. However, because the 1970 agreement also contained a clause expressly stating the parties' will to create a new agreement, the Court held that there was an extinctive novation. *Id.* at 77, 14 Official Translations at 103.

In the present case the change in the Agreement is much less significant than the changes in *Marina Industrial.* Nieves was manager, president, and a shareholder of

---

**17.** Docket no. 1, at 2–9.

**18.** Docket no. 1, at 2–6.

ERO Technology.[19] Furthermore, Plaintiffs allege that Nieves was working as Dymax's sales agent prior to 1990.[20] The only change that Plaintiffs can point to is that Nieves doing business as Engineering Consulting Group took over as Dymax's sales agent from ERO Technology. Plaintiffs do not allege that any other terms of the Agreement have been changed. The change in the sales agent from Nieves under ERO Technology to Nieves doing business as Engineering Consulting Group, without any other changes in the Agreement and without any express indications by the parties of an intent to novate, does not constitute an extinctive novation of the Agreement. See P.L.M. Int'l, 834 F.2d at 251; Blasini, 104 P.R.Dec. at 580–81, 4 Official Translations at 809–10 (1976) (Trías Monge, C.J., concurring). In Marina Industrial, the new agreement contained vastly more extensive changes than the changes to the Agreement in the present case. In Marina Industrial, there was a change in the identity of one of the parties, a change in the area of distribution, a change in the termination time period, and the addition of a non-compete clause. 114 P.R.Dec. at 76, 14 Official Translations at 102–03. These changes by themselves were not, however, sufficient to constitute an extinctive novation. Id. In the present case, the only change is to the identity of the sales agent. There is no evidence that the parties expressly stated that they were creating a new agreement. Moreover, there is no evidence that this change created an absolute incompatibility. An extinctive novation of the Agreement cannot be presumed, and it must be established "without any trace of doubt." See Warner Lambert, 101 P.R.Dec. at 389, 1 Official Translations at 544. Plaintiffs have not presented the copy of a new agreement. Their only allegation of a change in the original Agreement is that the sales agent was changed from Nieves under ERO Technology to Nieves doing business as Engineering Consulting Group.[21] This change, without

more, is not sufficient to extinctively novate the Agreement.

There is no evidence of an extinctive novation of the 1986 Agreement. Plaintiffs have submitted a Dymax invoice sent to Nieves at ERO Telecom in 1991; a Dymax letter written in 1992 in which it stated that it was now sending commission checks directly to Nieves; letters from 1993 and 1995 in which Dymax writes to Nieves at Engineering Consulting Group; and Internal Revenue Service forms which indicate that Dymax was directly paying Nieves in 1994 and 1995.[22] Plaintiffs also rely on Dymax's admission to an interrogatory in which Dymax admits that ERO Technology was appointed as Dymax's exclusive sales agent pursuant to the original Agreement.[23] This evidence establishes that Nieves had a business relationship with Dymax and that Dymax dealt with him alternatively (1) as a member of ERO Technology, (2) as a member of ERO Telecom, (3) doing business as Engineering Consulting Group, and (4) as an individual. None of this evidence, however, controverts Dymax's arguments and Plaintiffs' own allegations that Nieves' relationship with Dymax as its sales agent was created by the 1986 Agreement. This evidence does not establish that there was an extinctive novation after Law 21 took effect in 1990. Because Plaintiffs have failed to establish a genuine issue of fact as to the novation of the Agreement, the Court grants Dymax's motion for partial summary judgment with regard to Plaintiffs' Law 21 claim.

### 2. The Article 1802 claim

▆ Dymax also moves for summary judgment on Plaintiffs' claim under Article 1802 of the Puerto Rico Civil Code. This article makes a party liable when its negligent acts or omissions cause injury to another. P.R.Laws Ann. tit. 31, § 5141. Plaintiffs' Article 1802 claim appears in the complaint's third cause of action.[24] It is the only cause of action in the complaint which

19. Docket no. 26, at 5–6.

20. Docket no. 1, at 2–6.

21. Docket no. 1, at 2–3.

22. Docket no. 14, exhibits 1–4; docket no. 16, exhibits A & D.

23. Docket no. 14, at 2.

24. Docket no. 1, at 11.

seeks relief for Nieves' wife Rosa Quiñones Cecilio and the couple's conjugal partnership. In this third cause of action, Plaintiffs incorporate all previous pleadings in the complaint. The only previous pleadings which mention Quiñones or the conjugal partnership are the paragraphs which identify the parties [25] and an allegation that "Since 1994, Plaintiff Quiñones has been actively involved assisting her husband in the sales and marketing of Dymax's products." [26] The third cause of action alleges that "Dymax's illegal, guilty and negligent actions have directly caused damages to Plaintiffs Quiñones and the Conjugal Society." The only other allegation in the third cause of action is that these damages consist mainly of "personal anguishes." Other than the Law 21 claim and this negligence claim, Plaintiffs only remaining claim is a claim by Nieves for breach of contract in which Plaintiffs allege that Dymax owes him $40,000 in unpaid or undercharged commissions. Dymax argues that these allegations are insufficient to support a claim under Article 1802.

 A tort action under Article 1802 is based on a violation of a right or an omission of a duty required by law. *Ocasio–Juarbe v. Eastern Airlines, Inc.*, 902 F.2d 117, 120 (1st Cir.1990) (reproducing in full official translation of Puerto Rico Supreme Court's response to certified questions, 90 JTS 20 (1990)). Article 1802 negligence applies in cases where the party causing the injury had no prior obligation or duty to the party suffering the injury. *Ramos Lozada v. Orientalist Rattan Furniture, Inc.*, 92 JTS 74, 9577 (1992); *Arroyo v. Caldas*, 68 P.R.R. 639, 641 (1948); *Pennsylvania Ship Supply v. Transcaribbean Maritime*, 825 F.Supp. 453, 455 (D.P.R.1993). Generally, Article 1802 does not apply in the context of commercial transactions. *Betancourt v. W.D. Schock Corp.*, 907 F.2d 1251, 1255 (1st Cir. 1990) (Breyer, C.J.).

 Plaintiffs' complaint does not specify what actions by Dymax constituted a violation of a right or an omission of a duty

to Quiñones or the conjugal partnership. Dymax argues—and the Court agrees—that without any specific allegations of negligence, in order for Plaintiffs' Article 1802 claim to survive, it must have a basis in Dymax's alleged conduct as set forth in Plaintiffs' Law 21 or breach of contract claims. In their opposition, supplement to their opposition, and sur-reply, Plaintiffs address Dymax' argument on this issue only once. In the conclusion of their opposition, Plaintiffs argue, "Due to the applicability of Law 21 to this case, and the illegal actions of Dymax under this Act, the damages claimed under Article 1802 are appropriate." [27] Plaintiffs offer no evidence, cite to no case law, and refer to no statutes to support this conclusory statement. A party that makes a claim by raising it in a perfunctory manner without any support or development of its argument waives the claim. *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 100 (1st Cir.1996); *Charles v. Rice*, 28 F.3d 1312, 1320 (1st Cir. 1994); *Goldman, Antonetti, et al, v. Medfit Int'l*, 982 F.2d 686, 688 n. 6 (1st Cir.1993). In the present case, Plaintiffs' unsupported and perfunctory defense of their Article 1802 claim constitutes a waiver. Moreover, Plaintiffs' conclusory one-sentence defense of its Article 1802 claim mentions only the Law 21 claim as a basis from which the Article 1802 claim could arise. The Law 21 claim has been dismissed from this action. There remains only the breach of contract claim. Plaintiffs do not make any argument that the breach of contract claim is sufficient to support the Article 1802 claim. An issue that was raised in a complaint but was ignored at the summary judgment stage is deemed waived. *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir.1995). Thus, Plaintiffs have waived their Article 1802 claim.

 Even if Plaintiffs had not waived this claim, the Court would reach the same conclusion. A plaintiff may bring a negligence claim based on a contractual relationship when there is both an alleged breach of contract *and* an alleged breach of the general duty not to negligently cause injury. *Ramos*

---

**25.** Docket no. 1, at 2.

**26.** Docket no. 1, at 5.

**27.** Docket no. 14, at 8.

*Lozada,* 92 JTS at 9577–78. This general duty not to act negligently must arise out of conditions separate from the parties'· contract. *Id.* If a plaintiff's damages arise exclusively from a defendant's alleged breach of contract, the plaintiff does not have a separate cause of action for negligence. *Id.* In the case before the Court, there is no allegation or evidence that Dymax had a contractual relationship with Quiñones or the conjugal partnership. The record is similarly bereft of any allegation or evidence that Dymax breached a non-contractual duty to Quiñones or the conjugal partnership. Therefore, there can be no Article 1802 claim based on the breach of contract claim.

▓▓▓▓ It is true that under Puerto Rico law, the spouse or relatives of an individual may have a derivative Article 1802 action for injuries suffered directly by the individual. *See Santini Rivera v. Serv Air, Inc.,* 94 JTS 121, 184 (1994); *Correa v. Puerto Rico Water Resources Authority,* 83 P.R.R. 139, 143–54 (1961); *Hernández v. Fournier,* 80 P.R.R. 94, 97–104 (1957). Thus, a wife could bring a claim under Article 1802 when her husband has a cause of action for claims such as racial discrimination, malicious persecution, defamation, medical malpractice, and wrongful death. *See Santini Rivera,* 94 JTS at 184 (collecting cases). The Court is unaware of—and Plaintiffs have not presented—any case which allowed a spouse to bring a negligence claim based solely on injuries suffered by her husband for an alleged breach of contract.[28] A plaintiff who brings an action in federal court under the court's diversity jurisdiction cannot expect the court to blaze new legal trails unless the plaintiff has provided the court with a reason to believe that the local forum's highest court would blaze the same trail. *Ryan v. Royal Ins. Co. of America,* 916 F.2d 731, 744 (1st Cir.1990); *see also R.W. Int'l Corp. v. Welch Foods, Inc.,* 88 F.3d 49, 52–53 (1st Cir.1996) (Absent a controlling state court precedent, a federal court sitting in diversity may, if it is reasonably clear, predict what conclusion the state court would make). As discussed above, Plaintiffs in the present case have presented no legal support for their Article 1802 claim. Thus, without any legal support, the Court is unable to hold that Quiñones has an Article 1802 arising out of the claim for breach of contract. Based on all of the above, the Court grants Dymax's motion for summary judgment on Plaintiffs' Article 1802 cause of action.

### 3. The breach of contract claim

▓▓▓▓ The sole surviving cause of action is the claim for breach of contract. In that claim, Plaintiffs allege that Dymax owes Nieves $40,000 as a result of unpaid and underpaid commissions. This remaining claim for $40,000 is below the $50,000 [29] amount required for a court's diversity jurisdiction. *See* 28 U.S.C.A. § 1332(a). In determining diversity jurisdiction, however, a court must look to the circumstances at the time the complaint was filed. *Coventry Sewage Associates v. Dworkin Realty Co.,* 71 F.3d 1, 4 (1st Cir.1995). Subsequent events such as a change in the amount in controver-

---

**28.** In its survey of cases in which one spouse had an Article 1802 action for injuries directly suffered by the other spouse, the Puerto Rico Supreme Court in *Santini Rivera* cited *Santiago v. Sears Roebuck,* 102 P.R.Dec. 515, 2 Official Translations 655 (1974). *See* 92 JTS at 184. In *Santiago,* the defendant department store denied the plaintiffs—a husband and wife—use of their store credit card because their account was in arrears. 102 P.R.Dec. at 517, 2 Official Translations at 657. The Puerto Rico Supreme Court held that the plaintiffs' claim could be based in either contract or negligence. *Id.* at 521–23, 2 Official Translations at 662–64. The Supreme Court's opinion in *Santiago,* however, does not discuss anywhere the issue of whether a spouse could bring an Article 1802 claim when her husband suffers a breach of contract. In fact, in *Santiago,* it appears that both spouses were hold-

ers of the credit card. *See id.* at 517, 2 Official Translations at 657. Thus, the holding in *Santiago* is inapplicable to the question in the present case of whether Quiñones may bring an Article 1802 action because her husband suffered injuries as a result of Dymax's alleged breach of contract.

**29.** Section 205 of the Federal Courts Improvement Act of 1996 raises to $75,000 the amount required for a diversity jurisdiction case. Pub.L. No. 104–317, 110 Stat. 3847. The Act was enacted on October 19, 1996. The amendment raising the jurisdictional amount takes effect 90 days after the date of the Act's enactment. *Id.* Therefore, the new jurisdictional amount is inapplicable to the present case.

sy will not deprive a court of jurisdiction. *Thesleff v. Harvard Trust Co.*, 154 F.2d 732, 732 n. 1 (1st Cir.1946); *see also Jones v. Knox Exploration Corp.*, 2 F.3d 181, 182–83 (6th Cir.1993); *Klepper v. First American Bank*, 916 F.2d 337, 340 (6th Cir.1990) (When part of a claim is dismissed pursuant to a motion for summary judgment and the remaining amount in controversy is below the jurisdictional amount, the court retains jurisdiction to hear the remaining claim.); 14A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 3702, at 35 (2d ed. 1985); *but see Shanaghan v. Cahill*, 58 F.3d 106, 109–12 (4th Cir.1995) (When part of a claim is dismissed at the summary judgment stage and the remaining claim is below the jurisdictional amount, the court has discretion to retain or dismiss the remaining claim, guided by the factors for whether a court should exercise its supplemental jurisdiction to hear a matter after the federal basis disappears); *Taylor v. Lotus Development Corp*, 906 F.Supp. 290, 298–99 (D.Md.1995). The amount in controversy is determined from the face of the complaint, unless it appears that the amount stated was not claimed in good faith. *Coventry*, 71 F.3d at 4. In the case before the Court, Plaintiffs' complaint sought damages in the amount of $470,000. There is no indication—and Dymax has not argued—that this claim was made in bad faith. Accordingly, the Court has jurisdiction to hear the breach of contract claim even though it is for an amount less than the jurisdictional limit.

### 4. The motion to amend the complaint

■ On October 30, 1996, Plaintiffs filed a motion tendering an amended complaint.[30] In its scheduling order of December 20, 1995, the Court set February 5, 1996, as the deadline for amending the complaint and September 5, 1996, as the deadline for concluding discovery.[31] As discussed above, it is essential that a court's deadlines be followed in order to allow for the proper management of the court's caseload. *See Serrano–Perez*, 985 F.2d at 628; *Thibeault*, 960 F.2d at 247 n. 7; *Riofrio Anda*, 959 F.2d at 1154–55. It would

be unfair to allow Plaintiffs to amend their complaint more than eight months after the deadline for doing so and more than a month after the deadline for concluding discovery had passed. Accordingly, the Court denies the motion to amend the complaint.

WHEREFORE, the Court grants Dymax's motion for summary judgment (docket no. 10) and denies the motion to amend the complaint (docket no. 25). Partial judgment shall be entered dismissing the first and third counts of the complaint.

**IT IS SO ORDERED.**

---

**30.** Docket no. 25.

**31.** Docket no. 6.