USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

No. 97-1491

 CARMEN M. RODRIGUEZ-RIOS, ET AL.,

 Plaintiffs, Appellants,

 v.

 MIGUEL A. CORDERO, ET AL.,

 Defendants, Appellees.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Jos Antonio Fust, U.S. District Judge]

 

 Before

 Torruella, Chief Judge,

 Cyr, Senior Circuit Judge,

and DiClerico, District Judge.

 

 Carlos Del Valle Cruz for appellants.
 Benicio Sanchez-La Costa, with whom Jorge Rodriguez-Micheo,
Goldman Antonetti & Cordova, Sigfredo Rodriguez-Isaac, Assistant
Attorney General, Department of Justice, Carlos Del Valle-Cruz and
Lespier & Munoz Noya were on brief for appellees.

 

 March 12, 1998
 CYR, Senior Circuit Judge. Plaintiff Carmen Rodriguez-
Rios, along with her husband and their conjugal partnership, appeal
from a district court judgment rejecting her political
discrimination claims against various executives and managers
employed at the Puerto Rico Electric Power Authority ("PREPA") who
demoted Rodriguez, due allegedly to her political affiliation. We
vacate the district court judgment and remand for further
proceedings.
 I
BACKGROUND
 Plaintiff, a longtime activist in the Popular Democratic
Party ("PDP"), served as Executive Secretary to both the Chief of
Staff of the Governor of Puerto Rico and the Secretary of State
while the PDP held sway in the Commonwealth of Puerto Rico between
1985 and 1990. Plaintiff commenced her employment with the Human
Resources Department at PREPA in 1990 and became its Coordinator of
Eligible Personnel Affairs on July 5, 1992.
 Shortly after Pedro Rossell¢ of the opposition New
Progressive Party ("NPP") was elected Governor of Puerto Rico on
November 4, 1992, he appointed a fellow NPP member, defendant
Miguel Cordero, as Executive Director of PREPA. Cordero in turn
appointed the other named defendants, all NPP members, to
managerial positions in the Human Resources Department.
 Following the new NPP appointments, plaintiff was
assigned employment duties theretofore performed by persons holding
employment classifications well below the M-IV level in which
plaintiff continued to be classified. Ultimately, on July 29,
1994, defendant Eckart, the PREPA Personnel Director, formally
demoted plaintiff to Confidential Secretary I (M-I level),
Warehouse Section, Administrative Services Department, Supplies
Division, ostensibly pursuant to a Human Resources Department
reorganization orchestrated by defendant Verge under the direction
of defendant Cordero.
 On March 14, 1995, plaintiff, her husband and their
conjugal partnership filed the present action in which plaintiff
alleged that defendants had demoted her based solely on her PDP
affiliation. See 42 U.S.C. 1983. For their part, plaintiff's
husband and the conjugal partnership invoked the supplemental
jurisdiction of the district court, see 28 U.S.C. 1367(a), and
alleged violations of their derivative rights under Puerto Rico
law, see P.R. Laws Ann. tit. 31, 5141, resulting from the alleged
political discrimination against plaintiff in violation of P.R.
Laws Ann. tit. 29, 136, 140, 146. See Nieves Domenech v. Dymax
Corp., 952 F. Supp. 57, 66 (D.P.R. 1996); see also Santini Riverav. Serv Air, Inc., 94 J.T.S. 121 (1994).
 The defendants were awarded summary judgment on the
ground that the challenged demotion had been effected pursuant to
a bona fide reorganization. The commonwealth-law claims brought by
the husband and conjugal partnership were dismissed, apparently due
to lack of standing to sue under section 1983.
 II
DISCUSSION
A. Political Discrimination
 In political discrimination cases, nonpolicymaking
employees have the threshold burden to produce sufficient direct or
circumstantial evidence from which a rational jury could find that
political affiliation was a substantial or motivating factor behind
the adverse employment action. See Larou v. Ridlon, 98 F.3d 659,
661 (1st Cir. 1996); Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st
Cir. 1993). At that point the employer must articulate a
nondiscriminatory basis for the adverse employment action and prove
by a preponderance of the evidence that it would have been taken
without regard to plaintiff's political affiliation. See Larou, 98
F.3d at 661; see also Mt. Healthy City Sch. Dist. Bd. of Educ. v.
Doyle, 429 U.S. 274, 287 (1977).
 The plaintiff attested, without evidentiary
contradiction, that her PDP affiliation was widely known and that
the defendants were prominent members of the opposition NPP. See,
e.g., supra at p. 2. The district court nevertheless concluded, in
reliance on Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49 (1st
Cir. 1990), that the politically charged atmosphere at PREPA,
without more, did not demonstrate a direct causal link between
plaintiff's PDP affiliation and her demotion.
 Our affirmance of the district court ruling in Correa-
Martinez was explained as follows:
 The complaint did not say that plaintiff
 possessed, or expressed, any significant
 political views; indeed, implicit in
 plaintiff's arguments is the suggestion that
 he, himself, scrupulously avoided partisan
 political involvement. . . . [The complaint]
 did not maintain that defendants knew anything
 about plaintiff's politics or that their
 motivation related in the slightest to
 plaintiff's exercise of any first amendment or
 other constitutionally protected right.

Id. at 57-58 (emphasis added) (footnote omitted). In contrast,
here the plaintiff alleged in her complaint and proffered competent
evidence that the defendants were NPP activists who were well aware
that she was a prominent PDP activist.
 Although a highly charged political atmosphere alone
cannot support an inference of discriminatory animus, "'[a] highly
charged political atmosphere' . . ., coupled with the fact thatplaintiffs and defendants are of competing political persuasions,
may be probative of discriminatory animus." Acevedo-Diaz, 1 F.3d
at 69 (emphasis added). Thus, unlike in Correa-Martinez, but just
as noted in Acevedo-Diaz, here "[a] jury reasonably could have
concluded that [plaintiff] . . . [was a] conspicuous target[] for
political discrimination." Id. Therefore, even standing alone
such circumstantial evidence "would give us serious pause." Id. 
But there was more.
 Viewed in the light most favorable to plaintiff, seeLarou, 98 F.3d at 660 n.1, other evidence adduced by plaintiff
established a prima facie case of political discrimination. For
example, plaintiff adduced evidence that every employment task for
which she had been responsible prior to her demotion was performed
thereafter by an NPP member and that at least three new recruits to
the Human Resources Department were NPP members, whereas there is
no evidence that any new recruit was a PDP member. Moreover, the
summary judgment record reflects that the putative reorganization
witnessed seven PDP-member demotions, with no evidence that any NPP
member was either demoted or discharged.
 The district court ruled this evidence immaterial,
explaining that "this case does not directly concern other parties
outside those in the caption . . . ." However, as we pointed out
in Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 706 (1st Cir.
1993), and in Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 40
(1st Cir. 1993), given similar evidentiary showings it is for the
jury to determine whether the defendants were motivated by a
discriminatory animus. Since there can be no serious question that
the aforementioned circumstantial evidence, viewed in the light
most favorable to plaintiff, established a prima facie case that
she had been demoted due to her political affiliation, see id., we
now consider the nondiscriminatory motivations relied upon by the
defendants.
 The defendants were required to prove by a preponderance
of the evidence that their challenged employment actions were
prompted by legitimate, nondiscriminatory motives. At this point
"the plaintiff-employee will prevail unless the fact finder
concludes that the defendant has produced enough evidence to
establish that the plaintiff's [demotion] would have occurred in
any event for nondiscriminatory reasons." Acevedo-Diaz, 1 F.3d at
67.
 The defendants ventured that the demotion was due to a
bona fide reorganization at PREPA. The district court accepted
their contention that the PREPA labor force had become "extremely
bloated" and that defendant Verge, who managed the reorganization,
had not even known the plaintiff personally. In addition, the
court correctly noted that the position formerly held by plaintiff
required a bachelor's degree, which she lacked.
 Plaintiff responded that the bachelor's degree
requirement had been waived for at least one NPP member recruited
to the Human Resources Department around the time she was demoted. 
Further, she pointed out ÄÄ and defendants do not dispute ÄÄ that
the reorganization relied upon by defendants had not been
authorized by the PREPA Governing Board. Although defendant
Cordero concedes that no other reorganization plan has ever been
undertaken without Governing Board approval, he maintains that the
PREPA by-laws did not require that this reorganization receive
Governing Board approval. Yet neither Cordero nor any other
defendant proffered a copy of the PREPA by-laws or pointed to
language in the by-laws supporting this contention.
 The district court engaged in impermissible factfinding
at this point by concluding that plaintiff's demotion was simply
the neutral byproduct of a bona fide reorganization. The evidence
revealed that the so-called reorganization, in its entirety,
consisted of (i) defendant Cordero's request that defendant Verge
evaluate the functions of the Human Resources Directorate in order
to determine the need for its various services; (ii) defendant
Verge's subsequent recommendations to Cordero as to which services
were to be eliminated and the individual employees who were to be
demoted or discharged as a result; and (iii) Cordero's subsequent
approval of every recommendation made by Verge, without further
action or review by any higher authority in PREPA.
 Furthermore, even assuming the challenged employment
action constituted a "reorganization," its motivation remained very
much in question, especially since ÄÄ unlike all previous
reorganization plans at PREPA ÄÄ it was never reviewed or approved
by the Governing Board. Instead, the reorganization plan
memorandum was simply marked "Confidential and Privileged."
 Absent record evidence to substantiate the asserted
nondiscriminatory motive for bypassing the PREPA Governing Board
before proceeding with the "reorganization" plan, a rational
factfinder reasonably could infer that defendants' true purpose was
political discrimination. See Woodman v. Haemonetics Corp., 51
F.3d 1087, 1092 (1st Cir. 1995) ("Where the elements of a
sufficient prima facie case combine with the factfinder's belief
that the ostensible basis for [demoting an] employee was
pretextual, . . . the factfinder is permitted to infer . . .
intentional [political] discrimination . . . .").
 Finally, it seems reasonably clear, as the district court
observed, that the PREPA labor force was bloated. For example, the
NPP report which prompted defendant Cordero to launch the
reorganization plan stated:
 The number of employees [at PREPA] has
 increased alarmingly. As of January 1985
 [i.e., when the PDP took over power in Puerto
 Rico], [PREPA] had 8,472 employees, equivalent
 to 1 employee for every 125 subscribers. In
 1991, the number of employees had increased to
 10,616 or 1 employee for every 110
 subscribers. This excess of employees imposes
 an unbearable burden on the finances of
 [PREPA]. (Emphasis added).

Nevertheless, defendants have not explained or demonstrated how the
bloating in the 10,000-plus PREPA labor force was addressed by
plaintiff's demotion and transfer to a different department in
PREPA, as distinguished from her discharge.
 At the very least, therefore, the proffered justification
for her demotion lacked conclusive force, especially since the
defendants point to no record support for an inference that her
demotion materially reduced the cost of operating the Human
Resources Directorate. Moreover, particularly in light of the
uncontested evidence that twenty new recruits were hired by the
Human Resources Department during the reorganization, none of whom
were shown to have been PDP members, we can discern no rational
record basis for concluding that the putative reorganization was
motivated by cost savings.
 Accordingly, we are unable to agree that the evidence
proffered by the defendants compelled a finding that plaintiff was
demoted for nondiscriminatory reasons, see Jirau-Bernal v. Agrait,
37 F.3d 1, 4 (1st Cir. 1994) ("Summary judgment [is] warranted . .
. only if defendants' evidentiary proffer compel[s] the finding
that political discrimination did not constitute a 'but for' cause
for the demotion."), since a reasonable jury certainly could infer
that the so-called "reorganization" was a pretext for relegating
plaintiff to a less "sensitive" position in PREPA due to her
affiliation with the opposition PDP.
B. The Commonwealth-Law Claims
 Plaintiff's husband and the conjugal partnership asserted
derivative claims under Puerto Rico law, see Nieves Domenech v.
Dymax Corp., 952 F. Supp. 57, 66 (D.P.R. 1996); P.R. Laws Ann. tit.
31, 5141, which were dismissed because plaintiff's discrimination
claims under section 1983 were deemed deficient. Since the section
1983 claims must be reinstated, so must the commonwealth-law
claims. See Rodriguez v. Comas, 888 F.2d 899, 905 (1st Cir. 1989)
(holding that federal district court may exercise pendent
jurisdiction over state-law claims of 1983 plaintiff's spouse,
provided the claims share a common nucleus of operative fact with
the section 1983 claims).
 The district court judgment is vacated and the case is
remanded for further proceedings consistent with this opinion. 
Costs are awarded to appellants.
 SO ORDERED.