**WEB SERVICES GROUP, LTD., Plaintiffs,**

v.

**RAMALLO BROS. PRINTING, INC., Defendants.**

**Civ. No. 02–2407 JAF.**

United States District Court, D. Puerto Rico.

Sept. 28, 2004.

Lawrence E. Duffy, Martinez Alvarez, Menendez Cortada & Lefranc Romero PSC, San Juan, PR, for Plaintiff.

John F. Nevares, John F. Nevares & Assoc. PSC, San Juan, PR, for Defendant.

## OPINION AND ORDER

FUSTE, Chief Judge.

On September 17, 2002, Plaintiff, Web Services Group, filed this diversity breach of contract action against Defendant, Ramallo Bros. Printing, Inc. *Docket Document No. 1.* Plaintiff seeks damages and attorney's fees. *Id.*

Defendant moves to dismiss for failure to state a claim upon which relief can be granted. *Docket Document No. 6.* Plaintiff opposes the motion. *Docket Document No. 8.* Defendant filed a motion for summary judgment, *Docket Document No. 18,* which Plaintiff opposed. *Docket Document No. 26.* Plaintiff has filed its own motion for summary judgment. *Docket Document No. 25,* which Defendant has opposed. *Docket Document No. 29.*

### I.

### *Relevant Factual and Procedural History*

Unless otherwise noted, we derive the following facts from the parties' statements of uncontested facts. *Docket Document Nos. 18, 25, 26, 29.*

Plaintiff is a corporation organized under the laws of New York, with its principal place of business located in Fort Lee, New Jersey.

Defendant is a corporation organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in Caguas, Puerto Rico.

Mr. John Guarino is, and has been since its foundation, Plaintiff's president. Currently, and at all times relevant to this controversy, John Guarino has been employed by Plaintiff.

At Defendant's request, Plaintiff, through John Guarino, located specific equipment for Defendant's use. Plaintiff requested that Defendant sign a non-circumvention agreement before revealing to Defendant where they would have to go to inspect the equipment. On February 10, 2000, Plaintiff and Defendant entered into a "Non Circumvent Agreement" ("Agreement") under which Plaintiff agreed to provide services related to the acquisition of the equipment. The Agreement provided that all transaction and price negotiation would be made through Plaintiff. It was further agreed that Defendant would not purchase the equipment from anyone other than Plaintiff.

John Guarino took Defendant to the premises where the equipment was located, and Defendant's technician inspected the equipment. On the visit, Defendant found out that Heidelberg Web Systems, Inc. ("Heidelberg") owned the equipment.

Defendant expressed concerns about the equipment's price to Plaintiff. John Guarino called John Donnell, Manager of Used Equipment at Heidelberg, and authorized direct communication between Heidelberg and Defendant concerning the sale of the equipment.

On April 21, 2000, Defendant and Heidelberg executed an agreement for Defendant to purchase the equipment directly from Heidelberg for $1,200,000. On June

29, 2000, December 8, 2000, January 9, 2001, and March 5, 2001, John Guarino and Plaintiff sent invoices to Defendant for a $48,000 commission on the sale of the equipment.

## II.

### Standards

#### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action against him based solely on the pleadings for the plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In assessing a motion to dismiss, "we accept as true the factual averments of the complaint and draw all reasonable inferences therefrom in the plaintiffs' favor." *Educadores Puertorriqueños en Acción v. Hernández,* 367 F.3d 61, 62 (1st Cir.2004) (citing *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998)); *see also Wash. Legal Found. v. Mass. Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993). We then determine whether the plaintiff has stated a claim under which relief can be granted.

We note that a plaintiff must only satisfy the simple pleading requirements of Federal Rule of Civil Procedure 8(a) in order to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Morales–Villalobos v. Garcia–Llorens,* 316 F.3d 51, 52–53 (1st Cir.2003); *DM Research, Inc. v. College of Am. Pathologists,* 170 F.3d 53, 55–56 (1st Cir.1999). A plaintiff need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and need only give the respondent fair notice of the nature of the claim and petitioner's basis for it. *Swierkiewicz,* 534 U.S. at 512–15, 122 S.Ct. 992. "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* at 514, 122 S.Ct. 992 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

#### B. Summary Judgment Standard

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir.2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact; however the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* at 331, 106 S.Ct. 2548.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." *Euromodas, Inc. v. Zanella,* 368 F.3d 11, 17 (1st Cir.2004)(citing

*Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992)).

## III.

### Analysis

Defendant moves to dismiss for failure to state a claim upon which relief can be granted, *Docket Document No. 6,* and Defendant and Plaintiff have both filed motions for summary judgment. *Docket Document No. 18, 25.* We address each of the motions in turn.

### A. Motion to Dismiss

■ Defendant has filed a motion to dismiss, alleging that Plaintiff's complaint failed to state a breach of contract claim. *Docket Document No. 6.* We disagree. Plaintiff's complaint alleges that there was a "Non Circumvent Agreement" between the parties, that Plaintiff provided the services accorded to in the agreement, and that Defendant circumvented the agreement and thereafter failed to pay the price agreed upon for Plaintiff's services. *Docket Document No. 1.* The complaint sufficiently sets forth "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), which gives Defendant fair notice of the nature of the claim (breach of contract) and petitioner's basis for it (the Non Circumvent Agreement). *Swierkiewicz,* 534 U.S. at 512–15, 122 S.Ct. 992. Simply put, contrary to Defendant's assertions, Plaintiff alleges the existence of a contract and subsidiary allegations. We need not require more at this preliminary stage of the proceedings.

### B. Summary Judgment Motion

■ The Civil Code of Puerto Rico provides that subsequent agreements entered into between contracting parties may modify or extinguish their previous obligations. "Novation" can be accomplished by either changing the object and/or the principal conditions of existing obligations. 31 L.P.R.A. § 3241 (2004). "The Civil Code of Puerto Rico recognizes two types of novations: extinctive and modificatory." *Nieves Domenech v. Dymax Corp.,* 952 F.Supp. 57, 61 (D.P.R.1996) (citing *Warner Lambert Co. v. Tribunal Superior,* 101 D.P.R. 378, 390–91 (1973); *Blansini v. Beech–Nut Life Savers,* 104 D.P.R. 570, 580 (1976)). "An extinctive novation extinguishes the old obligation and creates a new one. In contrast, a modificatory novation simply modifies, but does not extinguish, the original agreement." *Id.* (citations omitted). For an extinctive novation to occur, the parties must expressly declare their intention that the new obligation extinguishes the previous one. *Marina Indus. Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64, 70–77 (1983); *Nieves–Domenech,* 952 F.Supp. at 61; *Ballester Hermanos v. Campbell Soup Co.,* 797 F.Supp. 103, 107 (D.P.R.1992). In the absence of an express declaration, novation is appropriate only when the two obligations are absolutely incompatible. *Francisco Garraton, Inc. v. Lanman & Kemp–Barclay & Co.,* 559 F.Supp. 405, 407 (D.P.R.1983). In other words, there must be a radical change in the nature between the new and old obligation so as to make them mutually exclusive. *G. & J., Inc. v. Dore Rice Mill, Inc.,* 108 D.P.R. 89 (1978).[1]

---

1. In *Marina Industrial, Inc.,* the court found that there was no modificatory novation where there was a change in (1) the identity of one of the parties, (2) the area of distribution, (3) the cancellation period, and (4) the addition of a non-compete clause, but the remaining obligations remained the same. 114 D.P.R. at 76. However, the court found that, coupled with the parties' explicit intent to negate the original contract, there was an extinctive novation. *Id.* In *Warner Lambert,* the original agreement included, inter alia, clauses: (1) establishing plaintiff as exclusive distributor, (2) establishing the territory of the exclusive distributorship, and (3) prohibiting the distributor from selling similar products in competition with defendant. *Id.* at 392.

Defendant bears the burden of proof on his novation claim. *See Union Mut. Life Ins. Co. v. Chrysler Corp.*, 793 F.2d 1, 13 (1st Cir.1986) (novation is an affirmative defense within scope of FED. R. CIV. P. 8(c)); *see also Nieves Domenech*, 952 F.Supp. at 62–64 (discussing "extinctive novation" claim under Puerto Rico law).

Because Defendant bears the burden of proof, we must inquire whether Defendant's evidence suggests that the original contract, and the changed terms as revealed in Plaintiff's letter are " 'absolutely incompatible' " with the original 1988 sales representation agreement. *Federal Deposit Ins. Corp. v. P.L.M. Intern., Inc.*, 834 F.2d 248, 251 (1st Cir.1987) (quoting *Francisco Garraton, Inc.*, 559 F.Supp. at 407).

Defendant's claim is premised on its theory that Plaintiff's authorization to negotiate directly with Heidelberg constituted a new agreement "incompatible in all points" with the Anti Circumvent Agreement. The parties' original contract provided that:

> [Defendant] and any of its Associates or Affiliates agrees that they wish to purchase the equipment and that all transaction and price negotiation will be made with and through [Plaintiff]. All information is "Confidential" and is not to be disclosed without written permition [sic] from [Plaintiff]. They further agree that they will not purchase the Equipment from anyone but [Plaintiff]. If the buyer, contrary to the terms of this agreement, purchases the above describe [sic] Equipment directly from anyone but [Plaintiff], the Buyer will pay [Plaintiff] a 25% commission. The Buyer agrees to be responsible for and pay any legal fees incurred by [Plaintiff] to collect this commission. If any other

equipment and/or intangibles is for sale by the owner or seller of the above named Equipment, all the terms of this agreement will apply.

*Docket Document No. 25, Exh. 4.*

Defendant alleges that, in a letter to Alberto Ramallo, John Guarino, Plaintiff's representative, agreed to accept a sales commission from Ramallo that would range from 3 to 5% based on purchase price, and that this, and other assurances, suggest that Plaintiff was allowing a direct negotiation and sale. *Docket Document No. 18.* The letter states:

> Alberto's concern was getting the best possible price for the machine. So to help even further, I agreed to accept a sales commission from Ramallo Bros. Instead of from Heidelberg so that everything would be in the open ... Alberto asked me how much commission I wanted. I asked what he thought was fair. He replied 3% to 5% based on purchase price, and I agreed ... I called John Donnell at Heidelberg when I got back to my office and explained my agreement made with Ramallo Bros. And gave clearance for direct communication between Heidelberg and Ramallo concerning the sale of [the equipment]. I spoke with Alberto concerning the commission due when the deposit was given to Heidelberg, and when the contract was signed, and when a dismantling date had been established etc. Each time I was told the commission would be paid when the next step occurred. Now the press has been bought, paid for and delivered ... We have an agreement based on honor and integrity to pay a commission for services rendered! I gave you Carte

---

The court found that a commission rate change did not lead to the novation the contract. *Warner Lambert*, 101 D.P.R. at 393. The court found that a quantitative change, which left intact the essential structure of the parties' obligations, did not reflect the will to novate nor were the new terms incompatible with the original contract. *Id.* at 393–94.

Blanche to deal in any way with Heidelberg that you chose and to establish a totally above board scenario as you requested.

*Docket Document No. 18, Exh. 4.*

Defendant alleges that, despite Plaintiff's averment that he did not authorize Defendant to execute the purchase without its participation, this letter shows that he expected to received a commission, that he agreed to receive it from Defendant, and that, therefore, the parties changed the principal obligation under the non-circumvent agreement for a new one where Defendant would deal and subsequently buy directly from Heidelberg. *Id.* Moreover, Defendant submits evidence that on March 27, 2000, Plaintiff sent Defendant a $48,000 invoice for the "[c]ommission due as agreed for the purchase of [the equipment] located at Times Printing Company, Wisconsin." *Id.* The $48,000 constitutes approximately 3% of the equipment's purchase price. *Id.* This invoice was sent almost a month prior to the April 21, 2000, execution of Defendant's purchase agreement for the equipment with Heidelberg. Defendant posits that, at the time of the invoice, Plaintiff had an opportunity to ratify the Non–Circumvent Agreement by completing the purchase with Heidelberg itself, and then invoicing Defendant for the full purchase price as per the contract. The fact that Plaintiff chose to issue an invoice for the commission, Defendant argues, strongly militates in favor of finding that Plaintiff intended to change the terms of their agreement with Defendant.

■ We agree with Defendant. The Agreement was meant to force Defendant to deal directly with Plaintiff, who would be the sole party negotiating and purchasing the equipment from any third party on Plaintiff's behalf. Plaintiff's letter suggests that Plaintiff intended to change the material terms of the contract by allowing that which the contract expressly prohibit-

ed: Defendant's independent negotiation for and purchase of the equipment. Plaintiff's subsequent behavior, such as invoicing Defendant for a commission prior to the sale, instead of purchasing the Equipment itself as per the terms of the original contract, only underscores Plaintiff's intent.

Even if we were to find that Plaintiff did not expressly intend to novate the full contract, the commission agreement as negotiated with Defendant, which Plaintiff plainly tried to enforce, is completely incompatible with the previous non-compete agreement. Plaintiff's approval of Defendant's negotiation and the subsequent sale, as shown in the communications here, is incompatible with the non-circumvent agreement, which explicitly prohibits Defendant from directly contacting and purchasing from Heidelberg. As such, the changes proposed by and agreed to by Plaintiff are not minor and inconsequential, but are significant enough so as to render the contract novated. *See, e.g. Warner Lambert,* 101 D.P.R. at 390–91. We find that Plaintiff's original contract with Defendant was novated.

Because the Agreement has been novated, the novation vitiates the penalty clause intended to amerce Defendant if it negotiated or bought directly from Heidelberg, since the penalty clause is a stipulation of accessorial nature included in the agreement to guarantee the performance of the principal obligation. 31 L.P.R.A. § 3134; *R.C. Leasing Corp. v. Williams Int. Ltd.,* 103 D.P.R. 163 (1974). Because Plaintiff and Defendant's contract was novated, we necessarily dismiss Plaintiff's complaint based on the existence of said contract.

## IV.

### *Conclusion*

In accordance with the foregoing, we DENY Defendant's motion to dismiss,

*Docket Document No. 6,* but we GRANT Defendant's summary judgment motion. *Docket Document No. 18.* Judgment to be entered accordingly.

**IT IS SO ORDERED.**